Argued November 3, affirmed December 30, 1966

# JENKINS ET AL *v.* AAA HEATING AND COOLING, INC.

421 P. 2d 971

*Richard T. Clarke,* Portland, argued the cause for appellants. On the brief were McGill and Clarke, Portland.

*Gerald R. Pullen,* Portland, argued the cause for respondents. On the brief were Hershiser, Canning, Pullen, Mitchell & Rawls, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

In an action for damages for personal injuries, the trial court ruled as a matter of law that the driver of the automobile causing the harm was an independent contractor. The plaintiff appeals from the directed verdict which exonerated the alleged employer.

The only issue upon appeal is whether the jury should have been given an opportunity to pass upon the plaintiff's allegation that the tort-feasor was the servant of the corporate defendant.

The facts are not in dispute. The defendant heating company, herein referred to as the company, sold and serviced furnaces. The company obtained customers for its furnace-cleaning business through the

services of some twelve persons who solicited orders throughout the metropolitan Portland area. The defendant Conner, who defaulted in this action, was such a salesman.

Some of the company's salesmen worked door to door. Others used the telephone. All were paid on a piece-work basis, their commissions depending upon the total cash price of each cleaning order. Commissions were not paid upon orders that were canceled by the customer or rejected by the company. The company reserved the right to reject any order tendered to it for any reason it saw fit. Salesmen were authorized to negotiate with customers on the price for each job, but their latitude in this respect was limited by the company's power to reject any order.

Each salesman, before being given an order book, was required to execute a written agreement which was drawn by the company for the purpose, among others, of insulating the company against liability arising out of the activities of the salesmen. (The document was also designed to protect the company insofar as possible from undesired contracts that might be tendered to it, as well as from tort liability.) The agreement characterized the salesmen as "brokers" and expressly denied them authority to bind the company on contracts, to hire salesmen, to incur expenses without prior approval, or to advertise. The agreement also required the salesman to carry public liability insurance. The default by Conner indicates that he paid no attention to this clause.

The agreement specifies:

"* * * It is expressly understood and agreed that the Broker is and shall be an independent contractor and not an employee, partner or joint adventurer with the Company."

██ Such language has been held by this court to be of evidentiary value concerning the relationship, but not necessarily binding upon third parties. If the conduct of the parties to the questioned agreement is inconsistent with their written declaration, their conduct will control. See *Wallowa Valley Stages v. Oregonian,* 235 Or 594, 597, 386 P2d 430, 431 (1963).

The evidence in the case at bar reveals that the conduct of the parties was consistent with their agreement. For tax purposes, unemployment compensation, social security, and the like, the company made no withholdings but allowed each salesman to retain his "down payments" as commissions and to make his own arrangements with the various governmental agencies interested.

While the written agreement does not so provide, the testimony at the trial was to the effect that it was the company's practice to terminate its relationship with a salesman whose performance was unsatisfactory, at any time, for any reason, simply by demanding the return of the order book.

Other evidence before the trial court tended to show that the salesmen, including Conner, were known by the company to engage in free-lance selling of other products and services from time to time. The company made no objection to such activities, so long as the other products and services were not those of competitors.

The principal fact relied upon by the company in support of the trial court's ruling was the total absence of control exercised by the company over the manner in which the salesmen accomplished their work. It is undisputed that the salesmen were free to keep such hours, work such territory, and make as many or as few calls as they saw fit. The only evidence of

any kind of managerial control was testimony that the company "expected" Conner to make ten or twelve sales per month. This expectation has to do solely with end results rather than with method. Conner testified that he had set for himself a quota of twenty sales per week, and that he usually made that many.

■■ As noted in *Wallowa Valley Stages v. Oregonian,* supra, the question whether a given person is a servant or an independent contractor ordinarily is one of law, if the facts are not in dispute and if only one reasonable inference can be drawn from the facts. Before the court submits to the jury a challenged allegation that one person is the servant of another, the court must satisfy itself in a preliminary way that the case is one in which a jury finding to either effect would not be contrary to the law. In the *Wallowa Valley Stages* case, the court submitted the question to the jury, and we affirmed. See also *Gossett v. Simonson,* 243 Or 16, 411 P2d 277 (1966), where the question was scope-of-employment rather than contractor-or-servant.

■■ The questioned relationship is said to turn upon the right of one party to control the activities of the other. See, e.g., *Swackhamer v. Johnson,* 39 Or 383, 65 P 91, 54 LRA 625 (1901). As long as such right exists, it is of no consequence that the employer may not have exercised it. *Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955). But the exercise of some limited control by the employer over the work being done will not necessarily make the worker an employee rather than an independent contractor. *Kowaleski v. Kowaleski,* 235 Or 454, 385 P2d 611 (1963). While there is no simple measure of the extent to which an employer may control a worker in the performance of his task without creat-

ing a master-servant relationship, control over performance remains the principal test. The definition of a servant in the Restatement (Second), Agency, § 220 (1) (1958), is generally accepted by most courts. It reads:

"A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

■ In the case at bar plaintiff relies upon the decision in *Wallowa Valley Stages v. Oregonian,* supra, for the proposition that his case should have gone to the jury. In the *Wallowa Valley Stages* case, however, we noted:

"The evidence that supervisory personnel from the newspaper's circulation department made frequent visits to Badgett [the employee] permitted the jury to infer that these visits were related to Badgett's methods of operation." 235 Or at 601.

There is no such evidence in the case at bar. Without such evidence, the plaintiff has failed to make a jury question upon the issue of the company's control of Conner's methods of operation.

Affirmed.

SLOAN, J., dissenting.

The variance between this case and the ultimate facts and reasons stated for decision in *Wallowa Valley Stages v. Oregonian,* 1963, 235 Or 594, 386 P2d 430, are so slight that one could merely change the names and some minor differences in the facts related in the *Wallowa* opinion, and that opinion would decide this case. A different result is reached in this case

by shifting the emphasis, not because of material difference in the evidence.

Quotation of two of the crucial, decisional paragraphs of the *Wallowa Valley Stages* opinion will serve as an example. The bracketed statements refer to the evidence in this case:

> "The jury was not bound to take the wholesale-retail [company-broker] language of the written contract at face value.[1] It was entitled to look beyond the written instrument and draw from the evidence its own inferences concerning the behavior of the parties. The jury was likewise entitled to draw upon common knowledge and experience in evaluating the testimony. It could, for example, take into consideration the publisher's interest in cultivating the circulation of its newspaper as a valuable asset to sell to advertisers. [It could, for example, take into consideration the company's interest in expanding sales as a means of increasing profits]. Thus the jury could infer that the reason Badgett [Conner] was frequently visited by circulation representatives was because the newspaper management was exercising some degree of control over the distribution of the papers to the subscribers. [The reasons that Conner was required to make daily visits to the sales manager was to receive instruction and to enable defendant to exercise some degree of control over his activities.] We do not hold that the amount of supervision exercised in the case at bar was sufficient to constitute Badgett [Conner] an employee as a matter of law. Neither can we hold that Badgett [Conner] was an independent contractor as a matter of law. We hold that there was evidence from which the jury could draw its own inferences on the matter.

> "The law generally contains no policy against

---

[1] In the instant case the contract, in addition to the typical blackface language excluding any employer-employee relationship contains "small print" whose purpose was to control the salesman. The sales manager so testified.

the subcontracting of all or part of the operations of an industry to independent parties. Whether such contractors are financially able to protect the public from losses caused by their negligence is, theoretically at least, a matter of indifference, if they are truly independent. Where, however, an enterprise in an integral part of its operation makes regular use of the services of individuals over whom it reserves absolute economic control, i.e., the right to hire and fire virtually at will, [Conner could be fired at defendant's will] a jury can find that such service personnel are subordinates. See *Fleming v. Ambulance Co.,* 155 Or at 360, and authorities cited. This is so even though between the parties performing the services are characterized as contractors." 235 Or at 602, 603.

The same interpolation could be done with all of the factual statements in the *Wallowa Valley Stages* opinion.

The last quoted paragraph is particularly appropriate to the evidence in this case and should be applied. The directed verdict should not have been granted.