Argued July 14, affirmed October 14, petition for rehearing
denied November 10, 1970

## GREAT AMERICAN INSURANCE COMPANY, *Respondent, v.* GENERAL INSURANCE COMPANY OF AMERICA, *Appellant.*

475 P2d 415

64

*Thomas M. Triplett,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

*Howard M. Feuerstein,* Portland, argued the cause for respondent. With him on the brief were Don H. Marmaduke, and Davies, Biggs, Strayer, Stoel & Boley, Portland.

Before O'CONNELL, Chief Justice, and SLOAN,[*] DENECKE, HOLMAN,[**] HOWELL, SCHWAB and LANGTRY, Justices.

HOWELL, J.

This is an action by plaintiff to recover pro-rata contribution from the defendant for the satisfaction of a judgment arising out of an accident in which plaintiff's insured was found liable. The trial court, sitting without a jury, entered a judgment requiring prorata contribution and defendant appeals.

In 1962 the defendant, General Insurance Com-

---

[*] Sloan, J., resigned September 30, 1970.
[**] Holman, J., did not participate in this decision.

pany, issued an insurance policy to the Oregon State Highway Commission insuring the following:

"Members of the Oregon State Highway Commission, and all of its or their officers, agents and employees, while acting in the course of their employment or while in the performance of their official duties in good faith and without malice for the Oregon State Highway Department, Salem, Oregon."

The liability for damages because of injury or destruction of property was limited to $50,000. The policy also included an "Other Insurance" clause which stated:

"If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The Highway Commission decided to improve a section of the Coos Bay-Roseburg highway, and C. R. O'Neil was awarded the contract. O'Neil was insured under a liability policy issued by plaintiff, and the policy also included a similar "other insurance" clause.

On June 19, 1963, an accident occurred on the section of highway under construction when a truckload of cattle slid off the highway and overturned. The owners of the truck and cattle brought an action for damages against O'Neil and the State Highway Commission. The action against the commission was dismissed on the basis of sovereign immunity, but a judgment was entered against O'Neil, plaintiff's insured, for $18,094. The plaintiff made a demand upon the defendant for a prorata contribution of the loss and

the demand was refused. Plaintiff then filed this action, contending that O'Neil was an insured within the meaning of defendant's policy insuring "agents and employees" of the Oregon State Highway Commission. The trial court found that O'Neil was an insured under the defendant's policy and that the loss should be prorated.

The first question presented in this appeal is whether O'Neil was an agent or an employee of the State Highway Commission within the meaning of defendant's policy with the commission.

The highway project was let on a competitive bid basis and O'Neil was awarded the contract. Because the project was considered a minor improvement job, the commission decided to rent the O'Neil equipment and to pay for hours of equipment time. The contract between O'Neil and the commission consisted of the Standard Specifications for Highway Construction, Special Provisions relating to the particular project, and maps or drawings. O'Neil was to supply the laborers, and it was his responsibility to carry workmen's compensation on the men. He was also required to post a bond.

Generally, the test for determining whether one is a servant or an independent contractor is based not on the actual exercise of control by the employer, but on the right to control. *Herff Jones Co. v. Tax Com.*, 247 Or 404, 409, 430 P2d 998 (1967); *Nordling v. Johnston*, 205 Or 315, 332, 283 P2d 994, 287 P2d 420 (1955). Where the employer has no right to control his actions, the actor is usually deemed to be an independent contractor. *Wallowa Valley Stages, Inc. v. Oregonian*, 235 Or 594, 598, 386 P2d 430 (1963). The exercise of some limited control by the employer over the work being

done will not necessarily make the worker an employee rather than an independent contractor. *Jenkins v. AAA Heating,* 245 Or 382, 386, 421 P2d 971 (1966). The test of right to control does not refer to the right to control the results of the work but rather to the right to control the manner and means of accomplishing the result. *Wallowa Valley Stages, Inc. v. Oregonian, supra,* at 599-600.

The special provisions of the contract relating to "clearing, grubbing, grading and drainage work," and including also flagging and traffic control, required the work to be done *"as directed by the engineer"*; the type and amount of equipment to be used *"as considered necessary by the engineer"* and only *"at such times and places as the engineer may direct"*; the Details of Work portion of the contract provided that performance of the work should be done in accordance *"with the instructions of the engineer"* and that the work be performed "in accordance with recognized standards and efficient methods and shall be *subject at all times at the direction of the engineer."* The evidence disclosed that sprinkling on the road had been conducted shortly before the truck slid off the road. The special provisions of the contract relating to sprinkling provided that the contractor should perform the sprinkling work *"as the engineer may direct"* and that "the sprinkling work shall at all times be *subject to the control of the engineer. * * ** It shall be done only *when and where directed by the engineer,* and the rate of application be as he directs * * *." In relation to the control of the work, the contract provided that all work was to be done under the *"supervision and direction of the engineer"* and "that the contractor shall at all times carry out and fulfill the

instructions and directions *of the engineer* insofar as the work to be performed under the contract is concerned." The contractor was required to have a competent superintendent or foreman "acceptable to the engineer" on the job and such foreman shall "receive instructions from the engineer or his authorized representatives."

■ The contract between the commission and O'Neil clearly establishes that the commission through its engineer retained the right to control all phases of the project, including everything from clearing and grubbing, sprinkling, traffic control, to the type of equipment and where and when it was to be used, and the details of the method of performance on this particular job.

It is true, as defendant argues, that the equipment was owned by O'Neil and rented to the commission, that O'Neil's employment was for a limited period of time, and that O'Neil was paid for his workmen by the commission and he, in turn, paid his employees. These are factors to be taken into consideration in determining the status of O'Neil, but the primary test is the right to control the means and methods of doing the work. We believe that such right in the Highway Commission justifies the conclusion that O'Neil was an employee of the commission.

The defendant argues that it did not intend to include O'Neil or a person in his category as being an agent or employee under the terms of its policy with the Highway Commission and that the possibility that O'Neil was covered by the policy came as a surprise. However, as early as August, 1964, one of the adjusters for defendant advised his claims office that he believed the Highway Commission "retained all

control over the actual building of the road, * * *." Moreover, the defendant must have known about the right to control provisions in contracts between the commission and persons in O'Neil's category and the legal effect of such provisions on the question of independent contractor or agent or employee of the commission. The insurance policy was drafted by the defendant and if it wished to restrict the policy coverage to exclude one in O'Neil's category it could have done so. *See Wooddale, Inc. v. Fidelity and Deposit Co. of Maryland*, 378 F2d 627, 630 (8th Cir 1967).

For its second assignment of error, the defendant contends it did not receive timely notice of the accident which occurred on June 19, 1963. The policy issued by defendant to the Highway Commission required written notification to be given "as soon as practicable."

The first actual notice of the accident by the Highway Commission was received by a demand letter dated June 19, 1964, from the claimant's attorney. A copy of this letter was sent to the defendant by counsel for the Highway Commission on June 25, 1964. The letter mentioned the date and place of the accident, the name of the claimant, and the fact that the accident occurred while the highway was under construction by the state and O'Neil Construction Company.

■ While the Highway Commission did not have actual notice of the accident until it received the claim letter of June 19, 1964, the record discloses that the acting job superintendent for the Highway Commission was informed of the accident by the assistant division engineer, and a note by the superintendent was entered of the accident, including names of witnesses, in his daily diary. Generally, knowledge of an accident by an

agent or a servant of the insured will be imputed to the insured if the agent or the servant is authorized to receive or to transmit such knowledge. *Hoffman v. Employer's Liability Corp.*, 146 Or 66, 29 P2d 557 (1934); Annot., 18 ALR2d 443, 472; 8 Appleman, Insurance Law and Practice 71, 74, § 4742 (1968).

■ Although the evidence does not disclose whether the acting superintendent or the assistant division engineer was specifically charged with the duty of reporting the accident, we conclude that the knowledge of these two individuals should be imputed to the Highway Commission. They were not minor employees but were supervisors in charge of the job and the general area for the Highway Commission. The headquarters of the Highway Commission is in Salem, and the only way the commission would have knowledge concerning incidents occurring in the field is by way of information relayed by supervisory personnel. If notice to the job superintendent and the assistant division engineer is not to be considered notice to the Highway Commission, it is doubtful if the insurer could ever insist on reasonable compliance with the notice provision. *See* 8 Appleman, *supra* at 77 note 26.

■ As a general rule, an insured may be excused for a delay in giving notice where it appears that he had no knowledge of the accident and could not have acquired such knowledge by the exercise of reasonable diligence. *Hoffman v. Employer's Liability Corp.*, *supra*; Annot., 18 ALR2d 443, 470; 8 Appleman, *supra*. However, the insured is required to exercise reasonable diligence to acquire information concerning the accident and to so regulate its business that it may be apprised of such incidents with reasonable celerity. *Hoffman v. Employer's Liability Corp.*, *supra* at 80;

8 Appleman, *supra* at 73. Where the insured fails to give the insurer notice for more than one year after the accident, the burden of proving a reasonable excuse is upon the insured. *Hoffman v. Employer's Liability Corp., supra* at 81. In *Hoffman*, the court found that the failure to give notice was excusable. In the instant case, there was no showing as to why the commission did not receive the notice possessed by the job superintendent and the assistant division engineer. *Oregon Farm Bureau v. Safeco*, 249 Or 449, 453, 438 P2d 1018 (1968).

We conclude that the notice was not given by the commission to the defendant as soon as practicable, as required by defendant's policy.

■ Finally, the trial court found, and we agree, that the defendant waived the late notice.

> " 'A failure to give notice or furnish proofs of loss or defects in the notice of proofs, are waived by a denial of liability on other grounds. This rule is fundamental, and scarcely needs to be supported by the citation of authorities.' " *Eaid v. National Casualty Co.*, 122 Or 547, 558, 259 P 902 (1927), quoting 4, Cooley's Briefs on Insurance at 3531.

After receiving the Highway Commission's notice of the accident and the claim, the defendant's adjuster wrote to the defendant's claim office and, because the accident had occurred a year previously, he mentioned the problem of late notice. The response from the claim office included comments about the elements involved in a late notice.

When plaintiff tendered the defense of O'Neil to the defendant, the defendant rejected the tender on the basis of lack of coverage and made no reference to late notice. Later, after the O'Neil case was tried and

plaintiff demanded contribution from defendant, the demand was rejected on the ground that O'Neil was not an agent or employee of the commission. No mention was made of lack of notice. The defense of lack of notice was not raised until after plaintiff's complaint was filed.

The defendant knew of the problem of notice in July 1964, at or prior to the time an investigation of the accident was started. It refused both the tender of defense and plaintiff's claim for contribution upon the sole ground of lack of coverage because O'Neil was not an agent or employee of the Highway Commission. In doing so, it waived the defense of lack of notice. *Nathan Miller, Inc. v. Northern Ins. Co.*, 42 Del 523, 3 Terry 523, 39 A2d 14, 23 (1944); *Eaid v. National Casualty, supra*; Annot. 18 ALR2d 443, 491.

The defendant contends that waiver of notice does not apply because plaintiff has failed to show that plaintiff or its insured was prejudiced by the waiver.

The defendant has confused the terms "waiver" and "estoppel" in this case. The distinction between the two words in insurance cases was aptly stated by the court in *Nathan Miller, Inc. v. Northern Ins. Co., supra*, as follows:

"* * * A waiver is the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. It involves both knowledge and intent, and is based on the idea of consent, express or implied. In strictness, waiver is referable to the act or conduct of one party only. It depends on what one party intended to do, rather than upon what he induced his adversary to do, as in estoppel. The doctrine does not necessarily im-

ply that one party to the controversy has been misled to his detriment in reliance on the conduct of the other party; and waiver is not only consistent with, but is generally created upon knowledge of all the facts by both parties. There may, therefore, be a waiver of an existing right apart from any element of estoppel. Waiver implied from circumstances is a question of fact dependent upon the particular facts of the case, and it is usually for the jury to say whether the conduct of the party evidences a conscious and voluntary abandonment of some right or privilege." 39 A2d at 25.

*See also Grau v. Northwestern Mut. Ins. Co.*, 221 Or 240, 350 P2d 1082 (1960); 16A Appleman, Insurance Law and Practice 279-281, § 9081, and 305, § 9084 (1968).

The defendant's final argument is that it cannot be charged with a waiver of notice because such waiver occurred after the time for giving notice had expired.

It is true that the courts are not in agreement regarding the effect of a denial of liability by an insurer after the time has elapsed in cases where presentation of proofs of loss must be filed within specified times. In some cases, it has been held that the insurer has not waived a late filing of proofs of loss because of a denial of liability made after the time for filing such proofs. Others hold that a denial of liability made after the time has expired is deemed a waiver. *See* Annot., 108 ALR 901, 909, 910, and Annot., 49 ALR2d 161, 175, 180.

None of the cases cited by defendant is applicable to the instant case because all of the policies in those cases required the proof of loss to be filed within a 60-day period after the loss occurred, and the time had expired when the alleged acts of waiver occurred. In

the instant case, the defendant's policy required the written notice to be given as soon as practicable, as compared to a definite, specified period for giving the notice. It cannot be said that the waiver occurred subsequent to the time for giving notice because that time had never been established. Whether or not the giving of notice approximately one year after the accident was timely or, if not timely, excusable, was a matter of judicial determination.

We have concluded that the notice was not given to the defendant as soon as practicable, as required by the policy, and that the evidence failed to establish a reasonable excuse for such delay; however, the defendant waived timely notice by denying liability on the grounds of lack of coverage.

The judgment is affirmed.