Argued April 1, reversed and remanded August 8, 1974

GOODRICH, *Respondent, v.* FORD MOTOR
COMPANY ET AL, *Appellants.*

525 P2d 130

*Ridgway K. Foley, Jr.,* and *Roland F. Banks, Jr.,* Portland, argued the cause for appellant Ford Motor Company. With them on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*John H. Holmes,* Portland, argued the cause for appellant MacKenzie Motor Co. With him on the briefs were Theodore B. Jensen, and Davis, Jensen, DeFrancq & Holmes, Portland.

*James G. Griswold,* Portland, argued the cause for respondent. With him on the brief were John J. Haugh, O'Connell, Goyak & Haugh, P. C., and Green, Griswold & Pippin, Portland.

Before O'CONNELL, Chief Justice*, and DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

This is an action for damages resulting from personal injuries suffered in a one-car accident. Plaintiff was a passenger in a Ford Bronco driven by her mother. Her mother lost control of the vehicle which ran up a bank and overturned. The defendants are the manufacturer of the vehicle, Ford Motor Company (Ford), and the dealer who sold the vehicle to plaintiff's parents, MacKenzie Motor Co. (MacKenzie). Defendants appealed from a judgment entered pursuant to a jury verdict for plaintiff.

The trial was lengthy and the record consisted of volumes of technical testimony by engineering experts and hundreds of exhibits. The case is also complicated because the adversaries disagree on the meaning of the

---

* O'Connell, C. J., did not participate in the decision of this case.

testimony and the inferences which may be drawn from it. Were it not for the record showing that counsel for the respective litigants participated in the same case, we would not have thought the briefs were written about the same piece of litigation. As best we can in a technical field, we will recite the facts in this case in the most favorable manner to plaintiff which is justified by the evidence, as is required after a plaintiff's verdict.

Plaintiff and her mother were vacationing at their summer home in the Cascade Mountains. While traveling in the Bronco to the nearest settlement for supplies, they were involved in the accident. The Bronco is both an on- and off-the-road vehicle which is manufactured for hard use in rough terrain. Both plaintiff and her mother testified that they were rounding a turn in the highway when all contact was lost between the steering wheel and the front wheels of the vehicle, and the accident resulted from the inability of plaintiff's mother to steer the vehicle. Following the accident the steering shaft was found to be completely disengaged from the steering gear at the steering coupling at the bottom end of the shaft, and the shaft and steering wheel were raised upward from their normal position.

Much of the record concerns a dispute concerning whether the disengagement was the cause or result of the accident. In view of the testimony of plaintiff and her mother regarding the loss of steering, we have no choice but to conclude that the jury was justified in finding that the disengagement was the cause and not the result of the accident. In view of defendants' contention that they were entitled to a directed verdict, or, in any event, to a new trial if there was a failure of

proof as to any single specification of negligence, the issue is raised whether the evidence was sufficient to show that either defendant or both were legally responsible for the loss of steering on the vehicle.

The complaint was brought and the case was submitted to the jury in two counts: one in negligence and the other in strict liability. The negligence count alleged negligence against both defendants in the following particulars:

1) In failing to properly tighten the clamp on the steering column shaft;

2) In using a square nut on the steering column shaft clamp and in failing to place a lock washer under the nut on the clamp bolt.

The complaint also alleged the following negligence against Ford alone:

3) In designing and assembling the vehicle in such manner as to permit excessive movement within the parts of the vehicle and the steering system so as to permit the steering to become disconnected.

In view of defendants' additional contention that the testimony positively shows that the failure of the steering shaft clamp had nothing to do with the accident and, thus, that there is no evidence of causation sufficient to justify submission of the first two allegations of negligence, we will set forth our understanding of the testimony of plaintiff's expert concerning the manner and cause of the accident. We believe his testimony would justify a conclusion that the basic cause of the steering failure was a backward and forward movement of the body of the vehicle in relation to the frame during its use prior to the accident. The steering gear box, which contains the mechanism controlling the front wheels, is at the bottom of

the steering shaft and is connected to the frame of the vehicle. The steering shaft is bolted to the steering wheel and approximately two-thirds of the shaft commencing immediately below the steering wheel is encased in the steering shaft housing which is attached to the body of the vehicle. The bottom of the steering shaft is connected to the mechanism in the steering gear housing by means of the steering coupling, which is the part that failed and became disengaged. The witness indicated that as the body moved backwards on the frame, the shaft (the position of which was controlled by the body) was pulled partially loose at the steering coupling from the steering gear (the position of which was controlled by the frame).

A "T" on the bottom end of the steering shaft fit into a slot in the steering coupling. The witness testified it was his opinion that a series of momentary separations or partial separations had taken place, with the "T" working itself in and out of the slot in the steering coupling. At one of these times, when the body moved forward, the "T" did not immediately fit perfectly into the coupling and "something had to give." That "something" was the steering shaft column clamp located immediately below the steering shaft housing. As the body moved forwards the steering shaft housing forced the clamp to move down the shaft. The two functions of the clamp were to keep the bearings in the steering shaft housing in place and to keep the steering shaft from working out and upwards from the steering coupling. The witness opined that at the time of the accident, the steering shaft had worked upwards until it became completely disengaged because the steering shaft clamp was no longer in a position to prevent this from happening. From such testimony we

must conclude there was evidence from which the jury could find that the looseness of the steering shaft clamp was a cause of the accident.

This is the setting in which it is alleged that defendants were negligent in failing to tighten the steering shaft clamp. The clamp was around the shaft, as previously described, below the steering shaft housing. Passing through the clamp and securing it was a bolt with a five-sided head, a lock washer immediately under the head of the bolt, and a square nut on the other end of the bolt. Plaintiff's expert testified that someone had improperly attempted to tighten the clamp by turning the nut, instead of the head of the bolt. All experts for both sides agreed that it was improper to attempt to tighten the clamp by turning the nut. Since the nut was square, the corners of it protruded too far out from the bolt, and the nut would ride up on the shoulder of the clamp, causing the nut to tip, the bolt to bend, and the clamp to crimp.

Plaintiff's expert testified that the bolt was, in fact, bent, and that this meant that, though the nut was tightened, the clamp was crimped and not tightened because pressure had been applied in the wrong direction and on the wrong part of the clamp, which tended to crimp rather than tighten it. He testified that, because of the well-known tendency of persons attempting to tighten a bolt to turn the nut instead of the head of the bolt, which had in fact been done in this case, a six-headed nut should have been used which would not have had the protruding corners causing it to ride up on the shoulder of the clamp. He also stated that his examination revealed that the nut had been so tightened *since the vehicle was new.*

Plaintiff's mother testified she had taken the vehicle back to MacKenzie and had complained about the difficulty she was having with the steering and asked that it be fixed. Plaintiff's father testified he was present at a time when his wife picked up the vehicle after it had been worked on and that *she was told the steering gear had been tightened.* There was also testimony that the vehicle had been serviced and repaired only by MacKenzie except for one instance which related exclusively to the four-wheel drive. From this testimony the jury could draw the inference that it was MacKenzie who had failed to tighten the steering column clamp properly.

What, however, about Ford? Because of plaintiff's expert testimony that the nut had been tightened since the vehicle was new, it cannot be inferred that the clamp remained in the same condition as it was in when it left Ford's hands nor that it had been last tightened by Ford. Plaintiff contends it can be inferred from MacKenzie's testimony that MacKenzie did not tighten the nut; therefore, it can be inferred that Ford did so tighten it, since it was the only other one who had anything to do with tightening the clamp, i.e., at the time of manufacture.

MacKenzie had no record of doing any repair work on the steering mechanism. It had invoices for work done on the vehicle, the cost of which was charged to the customer, and claims made against Ford for work done on the vehicle under Ford's warranty, but neither type of record showed any work done on the steering mechanism. Neither Mr. MacKenzie nor his service foreman had any memory of work being done on the steering mechanism of the vehicle, but neither would deny that such work had been done. They

simply had no memory of it. Mr. MacKenzie testified that repairs which did not take much time were not billed to the customer, nor was a claim for reimbursement always made against Ford under its warranty in such circumstances. He further testified that when a claim was made against Ford for reimbursement under its warranty, such claim was not always billed against the vehicle on which the work had been done but was, in fact, for convenience, sometimes billed against another vehicle on which a claim was already in the process of being submitted. One of the work orders had a memorandum on it which referred to a list (list of complaints by the customer) but no one was able to testify what, in fact, had been done pursuant to the list, nor was there any evidence that the list had been kept.

■ The fragmentary and inexact recordkeeping of MacKenzie, its witness's inability and unwillingness to deny that it had repaired the steering mechanism, and plaintiff's other evidence indicating that the improper tightening of the clamp was not done when the vehicle was new and that MacKenzie, after working on the vehicle, had told plaintiff's parents that the steering gear had been tightened, all combined to prevent the drawing of an inference by the jury that Ford must have been the one who attempted to tighten the clamp in the improper manner because MacKenzie had not. We believe it was error to submit the first specification of negligence as to defendant Ford.

Plaintiff contends that MacKenzie was the agent of Ford for the purpose of making repairs for Ford under its warranty and that since this was such a repair, Ford is responsible for MacKenzie's negligence in the manner in which it attempted to tighten

the clamp. Section 250, Restatement of the Law of Agency, indicates that the principal of an agent is only responsible for the negligent physical act of the agent if the principal has the right to govern the physical details of the manner of performance. There is no evidence in this record which discloses the details of the relationship between Ford and MacKenzie other than that the obligation of Ford to the customer to make repairs under its warranty is carried out by the dealer, and the dealer bills Ford for the repairs. There is nothing which discloses the extent of Ford's right, if any, to control the physical manner in which repairs are made.

Plaintiff cites *Vandermark v. Ford Motor Company,* 61 Cal2d 256, 391 P2d 168, 37 Cal Rptr 896 (1964), as authority for her contention that Ford is responsible for MacKenzie's negligence. In *Vandermark* the plaintiff was injured as a result of a defective brake cylinder. Ford contended that it was not responsible because the vehicle had passed through the dealer's hands and was not shown to have been in the same condition as it was when it left Ford's factory. The court held that Ford delegated to the dealer the final preparation of the vehicle for delivery to the customer, that this preparation was part of the manufacturing process, that Ford could not delegate the duty to have the cars delivered to the ultimate purchaser free from dangerous defects, and that Ford, therefore, could not escape liability upon the ground that the defect was caused by the dealer.

In the present case, the preparation for delivery service was performed by Ford before delivery to the dealer. Although there was evidence from which it could be found that the dealer did road test the vehicle,

there is no evidence that the clamp was tightened before delivery or that it needed tightening at that time. In addition, plaintiff submitted evidence showing that the tightening of the nut on the clamp had been done since the vehicle was new. Under such circumstances, we do not believe *Vandermark* is applicable as there is no evidence that MacKenzie, in tightening the clamp, was doing anything more than making repairs for Ford under its warranty.

Plaintiff also relies on *Snider v. Bob Thiebodeau Ford, Inc.,* 42 Mich App 708, 202 NW2d 727 (1972), in which it was held that in a situation like the present one, when the plaintiff is unable to show which of the two defendants is responsible for the negligence, the burden of negativing individual responsibility for the failure is upon the defendants. The difficulty with the application of that case is that plaintiff in the present case showed the dealer to be the one who negligently tightened the clamp.

■ Insofar as the second allegation relating to furnishing the square nut and to putting a lock washer under the head of the bolt instead of under the nut is concerned, there is sufficient evidence to submit the issue against Ford. We have already discussed the testimony of plaintiff's expert concerning the impropriety of the use of the square nut. Also, his testimony disclosed that the lock washer should have been under the nut instead of under the head of the bolt.

■ We do not, however, believe there was sufficient testimony to submit this issue against MacKenzie. Ford's drawings and specifications for the Bronco's steering apparatus are in evidence and illustrate a square nut, and a lock washer under the head of the

bolt rather than under the nut. Plaintiff is in the position of having to claim that MacKenzie was negligent in not changing Ford's specifications and design of the Bronco by substituting a hex nut for the square one and not changing the position of the lock washer. We do not believe it would be realistic for us to sustain such a position. We hold that a dealer in such circumstances as these is not required to do such a thing in order to comply with a reasonable degree of care.

Plaintiff argues that MacKenzie was responsible for using the square nut and having the lock washer in the wrong place since it was put on notice of defects in the steering system by complaints of plaintiff's mother, and it had the opportunity by the exercise of reasonable diligence to acquire knowledge of the defect, citing *Gow v. Multnomah Hotel, Inc.,* 191 Or 45, 49-50, 224 P2d 552, 228 P2d 791 (1951). We do not believe the rule to be applicable. According to plaintiff's testimony, Ford set the trap with the use of the square nut and MacKenzie negligently fell into it by tightening the clamp in the wrong manner. MacKenzie did not set the trap.

In view of the fact that there was no evidence of the first allegation of negligence as to Ford and no evidence of the second allegation as to MacKenzie, the case must be reversed and remanded for a new trial since we are unable to tell the basis for the jury's verdict. Only a general verdict was submitted to it.

There are many other specifications of error made by defendants; however, we believe most of them do not merit discussion since there is no indication that the circumstances they involve will necessarily exist upon retrial. There is one matter, however, which

should be mentioned in order to prevent possible error or confusion upon retrial. Plaintiff's allegations concerning causation, as pointed out in defendants' briefs, leave something to be desired. Plaintiff should be permitted to amend her complaint prior to retrial to rectify the situation.

The judgment is reversed and the case is remanded for a new trial in conformance with this opinion.