Argued and submitted October 9,
affirmed in part; reversed in part December 4, 1979,
petition for rehearing denied January 3, 1980

# PEEPLES,
## *Respondent,*
*v.*
# KAWASAKI HEAVY INDUSTRIES, LTD., et al,
## *Appellants.*

### (No. 75-2950, SC 25430)

603 P2d 765

William A. Beckett, Judge.

Jeffrey M. Batchelor, of Gearin, Landis & Aebi, Portland, argued the cause for appellants. With him on the briefs were John Gordon Gearin, and Davies, Biggs, Strayer, Stoel & Boley, Portland.

John R. Faust, Jr., of Hardy, McEwen, Newman, Faust & Hanna, Portland, argued the cause and filed a brief for respondent.

HOLMAN, J.

Lent, J., specially concurred and filed opinion.

## HOLMAN, J.

The issue in this case is whether the manufacturer and the distributor of Kawasaki motorcycles are vicariously liable for the negligence of a local dealer or his employee in performing service work provided for under the terms of a warranty agreement entitled "Selling Dealer's Warranty," which was prepared by the distributor and furnished to the motorcycle purchaser by the dealer. The primary question is whether the dealer while performing that work acted as the "servant" of the manufacturer or distributor, or both, or as an independent contractor.

James Peeples, the plaintiff, was severely and permanently injured while riding a Kawasaki motorcycle which he had purchased new in June of 1973 from a motorcycle dealer in Springfield. Early in July he took the motorcycle to the dealer's shop for the first periodic inspection and service which was required under the terms of his warranty. The accident happened five days later. There was evidence from which the jury could find that the accident was caused by the loose drive chain slipping off the sprocket and that the dealer had negligently failed to inspect the chain and to adjust it properly. Plaintiff brought this action against the dealer and also against both the manufacturer and the importer-distributor of the motorcycle. Prior to trial, he settled his case against the dealer for $100,000, giving the dealer and the dealer's insurer a covenant not to execute. The trial proceeded with the distributor and the manufacturer as the only defendants.

The jury returned a special verdict, finding that the dealer was the servant of both the distributor and the manufacturer, that the dealer (or his employee) had been negligent, and that the negligence was a cause of plaintiff's injuries. After adjusting the jury's assessment of plaintiff's damages to account for the $100,000 received from the dealer and for the 30%

contributory negligence which the jury found on plaintiff's part, the trial court entered judgment against both defendants for more than $1,750,000. Defendants appeal, contending that their separate motions for nonsuit and directed verdict should have been granted. They argue that the evidence was not sufficient to permit the jury to find that the dealer was the servant of either the distributor or the manufacturer.

In their briefs on appeal, both sides argued the question of the dealer's status as servant or independent contractor solely in terms of whether the distributor and the manufacturer had the right to control the dealer's conduct and that of his employees in the performance of services called for under the warranty agreement. We have frequently said or assumed that the existence of a master-servant relationship is to be determined according to whether the master had the right to control the conduct of the alleged servant.[1]

After hearing argument in this case, however, we became concerned about whether it is correct to treat the presence or absence of a right of control as the sole test of a master-servant relationship to the exclusion of an inquiry concerning whose affairs are carried on by the performance of the services. We have frequently referred with approval to the definition of a servant stated in 1 Restatement (Second) Agency 485-486, § 220:

> "(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right of control."

That section defines a servant in terms of both the master's right of control and the servant's employment to perform services "in the affairs of" the master.

[1] *See, e.g., Meskimen v. Larry Angell Salvage Company,* 286 Or 87, 91-92, 592 P2d 1014 (1979); *Great American Ins. v. General Ins.,* 257 Or 62, 475 P2d 415 (1970); *Jenkins v. AAA Heating,* 245 Or 382, 387, 421 P2d 971 (1966); *Wallowa Valley Stages v. Oregonian,* 235 Or 594, 598-599, 386 P2d 430 (1963); *Kowaleski v. Kowaleski,* 235 Or 454, 460-461, 385 P2d 611 (1963).

In *May v. Broun,* 261 Or 28, 40, 492 P2d 776 (1972), we suggested the possibility that

"* * * the real basis for the application of *respondeat superior* is not control, actual or putative, but rather the negligent party's act of carrying forward the business of his principal."

Because of our concern that it might not be correct to treat right of control as the sole test of the existence of a master-servant relationship, we asked the parties to submit supplemental memoranda addressing two questions: (1) whether, in order for an employer-servant relationship to exist, both the right of control and the performance of services "in the affairs" of the employer must be present and (2) if so, what evidence in the record tended to show that the dealer's services which caused plaintiff's injuries were performed in the business or affairs of the defendants rather than in the dealer's own business.

The parties responded with thorough memoranda in answer to these questions. Plaintiff's memorandum also took the position that the questions which we propounded had not been raised in the trial court. Upon further review of the record we agree. Defendants' argument in support of the motions for nonsuit and for directed verdict were directed only to the insufficiency of the evidence of a right of control. Both the requested jury instructions and the instructions actually given indicate that upon the question of the master-servant relationship the parties and the court treated the question of control or right of control as the only issue of fact. We conclude that under the circumstances it would be unfair to the plaintiff to address ourselves in this case to a reexamination of the problem. Adopting the issue as framed by the parties at trial, therefore, there was evidence to support a finding that the distributor had the right to control the actions of the dealer and his employees in the performance of the warranty-related services which the jury might have found were negligently performed.

[147]

The relationship between the dealer and the distributor is embodied in a "Dealer Sales and Service Agreement" which grants the dealer the "privilege of purchasing designated KAWASAKI motorcycles, parts and accessories * * * for sale at DEALER's premises" for a period of one year. The agreement provides that it is to be interpreted in accordance with California law, but the parties have not pointed to any portions of the agreement which require resort to special rules of construction, or to any California authorities of particular relevance. Paragraph 6 contains the "dealer's responsibilities" under the agreement:

"DEALER agrees to vigorously and aggressively promote the sale and service of motorcycles, parts and accessories sold by DISTRIBUTOR through compliance with such Dealer Standards as DISTRIBUTOR, in its sole discretion, may from time to time establish. Dealer standards shall include, but not be limited to, the areas of: (1) sales promotion, (2) physical facilities, (3) identification, (4) method of operation, (5) advertising, (6) inventory, (7) service, (8) tools and parts, (9) warranty repair, (10) employee training, (11) systems and reporting, (12) forecasts and ordering, and (13) financial responsibility. Without limiting the foregoing, DEALER specifically agrees on request to provide DISTRIBUTOR with monthly operating statements and with monthly motorcycle inventory and sales reports in a form and manner prescribed by DISTRIBUTOR."

Paragraph 10 provides that either party may terminate the agreement without cause upon 30 days' notice and that the distributor may terminate it immediately under a number of circumstances, one of which is:

"* * * (5) the breach by DEALER of any of the provisions of this agreement, including a failure to conduct his business in accordance with any requirements set forth in this agreement, including such Dealer Standards as may be established by DISTRIBUTOR: * * *."

This agreement clearly gives the distributor the right, through its power to set "standards" governing

[148]

the dealer's method of operation, service, and warranty repair and its power of immediate termination for the dealer's breach of any of those standards, to control to some degree the physical conduct of the dealer and his employees in the performance of warranty-related service work. If that right exists, we have said that it is not important that the right may not actually have been exercised. *Jenkins v. AAA Heating,* 245 Or 382, 386, 421 P2d 971 (1966); *see also Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955). In this case there was, however, some evidence that the distributor's right of control was in fact exercised. There was testimony from which the jury could conclude that the distributor furnished the dealer with charts showing how certain adjustments, including adjustments to the drive chain, should be made and that the dealer's mechanics were directed to follow those charts. The jury could also find that the distributor required the dealer's mechanics to attend its training schools and that the distributor periodically sent representatives to visit the dealer's shop to see that instructions were being followed.

Defendants have cited, in support of their position, our decision in *Goodrich v. Ford Motor Co.,* 269 Or 399, 525 P2d 130 (1974), in which we held that an automobile manufacturer could not be held liable for the negligence of its dealer in performing warranty services. The reason for our holding in that case is clearly stated at 407:

"* * * There is no evidence in this record which discloses the details of the relationship between Ford and [the dealer] other than that the obligation of Ford to the customer to make repairs under its warranty is carried out by the dealer, and the dealer bills Ford for the repairs. There is nothing which discloses the extent of Ford's right, if any, to control the physical manner in which repairs are made."

In the present case, however, there is the evidence which we have summarized above which will support a finding that the distributor had the contractual right

to control the manner in which the dealer performed warranty service on Kawasaki motorcycles. The trial court did not err in submitting the question of the distributor's vicarious liability to the jury.

As to the manufacturer, however, we find no comparable evidence in the record. So far as the evidence shows, there is no contractual relationship between the dealer and the manufacturer, and no history of either the exercise of actual control by the manufacturer over the dealer's performance of service work or any recognition by the dealer of the manufacturer's right to exert such control. The failure to grant the manufacturer's motion for directed verdict was error, and the judgment against the manufacturer must be reversed.

The fate of the judgment against the distributor depends upon the disposition of additional assignments of error. Of these additional assignments, several are based on the contention that plaintiff's covenant not to execute against the dealer operated, as a matter of law, to extinguish any vicarious liability on the part of the distributor. That contention is untenable in light of the terms of the covenant and of our decision in *Stanfield v. Laccoarce,* 284 Or 651, 661-663, 588 P2d 1271 (1978).

The distributor also contends that it was error to submit two of plaintiff's specifications of negligence to the jury. The first of these specifications is that the dealer was negligent in failing to assemble properly the drive chain and sprocket assembly on the motorcycle.[2] There was evidence from which the jury could find that the dealer, acting as the distributor's

---

[2] The complaint actually alleges that the "defendants" were negligent in this particular, and also in failing to warn the plaintiff of the dangers of a loose chain, an allegation which we discuss below. Although this language would justify submitting to the jury the question of the manufacturer's or the distributor's own negligence if the evidence warranted, the record is clear that the negligence aspect of the case was tried solely on a theory of those defendants' vicarious liability for the negligence of the dealer. We consider the sufficiency of the evidence, therefore, only with reference to that theory.

employee, routinely checked and, if necessary, adjusted the chain and sprocket assembly before delivering a new motorcycle to a customer. The jury could reasonably conclude that this was part of the process of assembly, and there was evidence to support a finding that plaintiff's injury was caused by the dealer's negligence in performing that task.

The second specification of which the distributor complains is that the dealer was negligent in

"* * * failing to warn Plaintiff that at any time the drive chain might become loose, run off the rear sprocket and catch against other parts of the motorcycle impeding the normal rotation of the rear wheel and causing the motorcycle to become uncontrollable."

The distributor argues that there is no evidence to support a finding that no warning was given. We hold, however, that such a finding by the jury was permissible. The distributor concedes that the written material given plaintiff at the time of purchase contained no such warning. The dealer testified that he probably waited on the plaintiff at the time of the purchase. Although he had no direct recollection of what he told plaintiff on that occasion, he did testify as to his practice when selling this model of motorcycle:

"I tell them right in their handbook that the chain is to be maintained by the rider. They should check their chain after they ride it a hundred miles or after they—every trip, check their chain, oil it and just keep it adjusted."

This testimony was in response to the question, "Now, what, if anything do you tell them about the chain?" The jury could infer that although the dealer normally instructed purchasers on the need to maintain the chain, he did not normally warn them, and thus in all probability did not warn this plaintiff, of the dangers stated in the specification of negligence.

There was, therefore, evidence to support a finding that no warning was given and the distributor has not

argued that the failure to give such a warning could not be found to be negligence. It was not error to submit this specification to the jury.

The judgment against the manufacturer is reversed; the judgment against the distributor is affirmed.

**TONGUE, J.,** specially concurring.

I concur in the result reached by the majority. With respect to the question raised by the majority whether the work of the dealer was both "subject to the * * * control or right of control" of Kawasaki Motors, and also "in (its) affairs," I would point out, however, that:

(1) This court has held in many cases that the *primary* test to be applied in such cases is *the right* of the claimed master or principal *to control* the manner in which work is performed by the alleged servant.[1] As held by the majority, there was ample evidence to support such a finding by the jury in this case.

(2) There was also ample evidence in this case from which the jury could properly find that Kawasaki Motors was in the business of selling motorcycles and that in performing the initial warranty inspection and repair work upon the motorcycle purchased by the plaintiff, this dealer was acting "in the furtherance of the business" of Kawasaki Motors and "in (its) affairs."[2]

**LENT, J.,** specially concurring.

I concur in the result reached by the majority in this case, and I concur in most of the reasoning, as I understand it. I concur with Justice Tongue in his

---

[1] *See, e.g., Meskiman v. Larry Angell Salvage Co.,* 286 Or 87, 91-93, 592 P2d 1014 (1979); *May v. Brown,* 261 Or 28, 36, 492 P2d 776 (1972); *Great American Ins. v. General Ins.,* 257 Or 62, 68, 475 P2d 415 (1970); *Jenkins v. AAA Heating,* 245 Or 382, 386, 421 P2d 971 (1966); *Wallowa Valley Stages, Inc. v. Oregonian,* 235 Or 594, 601-603, 386 P2d 430 (1963); and *Kowaleski v. Kowaleski,* 235 Or 454, 458-59, 385 P2d 611 (1963).

[2] *See Jorgensen v. Richard, Gearhard,* 266 Or 263, 265-66, 512 P2d 991 (1973).

assessment of the sufficiency of the evidence in the record to establish a jury question on the issue of whether the dealer was acting "in the affairs of" the distributor.

I confess to some confusion, however, as to the seeming point of difference between Justice Tongue and the majority as to the test for holding the distributor liable for the tort of the dealer. This difference centers around the elements to be considered in finding if one person is to be held liable for the torts of another. *See,* 1 Restatement (Second) Agency, § 220.

Perhaps my thinking is oversimplistic, but in analyzing the kind of problem which this case presents I prefer to go to certain principles which I regard as basic. These are:

1.  Ordinarily D is not liable to P for injury by the tort of X.

2.  That general rule is subject to exception in certain circumstances where X is employed to perform services for D, and, where those circumstances obtain, the law imposes liability vicariously upon D for the tort of X against P.

3.  If X is employed to perform services in the affairs of D, D *may* be liable to P for damages incurred by P resulting from the tort of X in the performance of those services.

    a.  If X is so employed, D will ordinarily be liable to P if D had control or the right to control over the physical conduct of X out of which the *ex delicto* cause arose.

    b.  As a "general rule" D will not be liable to P if D did not have such control or right to control.

Accordingly, insofar as the majority emphasizes the need for finding that X acted in the affairs of D, I agree that is a necessary preliminary test to ascertain whether D should be held liable for the tort of X against P. Insofar as Justice Tongue emphasizes the element of control or right to control as being the test,

I agree that must be the primary test to ascertain whether X is a servant or an independent contractor.

Nothing I say here should be construed to mean that I believe D cannot be liable to P by the fact alone that there was no control or right to control by D over X. One may well be liable for the torts of an independent contractor. 2 Restatement (Second) of Torts, § 409 sets forth the "general rule" that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants, but that "general rule" is now recognized as being primarily important only as a preamble to the catalog of its exceptions. *See,* comment *b* to § 409; *Shepler v. Weyerhaeuser Company,* 279 Or 477, 499, 569 P2d 1040, 1052 (1977). The trend of the common law is most definitely toward enlargement of the liability of D for the tort of X even where there is the relationship between them of employer and independent contractor rather than master and servant. *See, e.g., Lipman Wolfe v. Teeples & Thatcher,* 268 Or 578, 585, 588, 522 P2d 467 (1974).

It follows that establishment of the element of control or right to control only serves to establish that the "controlee" is a servant rather than an independent contractor; the element is not determinative of liability to the third person.