BRIAN ZWINGMAN, APPELLEE, V. RONALD KALLHOFF, DEFENDANT
AND THIRD-PARTY PLAINTIFF, APPELLANT, AND KEATING
INTERNATIONAL, INC., A NEBRASKA CORPORATION, AND
FARMHAND, INC., ALSO KNOWN AS NEW FARMHAND, INC., A
DELAWARE CORPORATION, THIRD-PARTY DEFENDANTS, APPELLEES.

507 N.W.2d 894

Filed November 12, 1993.    No. S-91-784.

Max G. Dreier, of Jewell, Gatz, Collins, Dreier & Fitzgerald, for appellant.

Robert A. Wichser, of Sodoro, Daly & Sodoro, for appellee Farmhand, Inc.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

The original plaintiff, Brian Zwingman, brought this negligence action to recover damages resulting from personal injuries which occurred on October 19, 1987, when his clothing became caught on a haystack mover which was owned by the

original defendant and appellant in this appeal, Ronald Kallhoff. Kallhoff filed a third-party petition against Keating International, Inc. and Farmhand, Inc. Those parties moved for summary judgment. The district court granted summary judgment in favor of Farmhand only. Kallhoff appeals from that summary judgment. Thus, this appeal involves only Kallhoff's assertion that the district court erred in granting summary judgment in favor of Farmhand.

A summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and that the moving party is entitled to judgment as a matter of law. *Gould v. Orr, ante* p. 163, 506 N.W.2d 349 (1993). In reviewing an order sustaining a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences that may be deduced from the evidence. *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993).

The record shows that the appellee Farmhand manufactured the haystack mover on which Zwingman was injured. Farmhand shipped the partially unassembled haystack mover to its dealer, Keating International. The machine was accompanied by printed assembly instructions. Keating International assembled the machine and sold the machine to the appellant, Kallhoff, on October 11, 1979.

Within 2 weeks after purchasing the haystack mover, Kallhoff encountered difficulty in maintaining the required coupling of two component parts of the haystack mover. Kallhoff discussed the problem with John Keating of Keating International. John Keating indicated to Kallhoff that someone from Keating International would travel to Kallhoff's farm to "have it checked out." Within a week after that conversation, Kallhoff discovered that set screws in the coupling had been replaced by protruding hex-headed bolts. It is one of these bolts which caught Zwingman's clothing.

There remains a dispute as to whether Keating International actually performed the repairs which resulted in the protruding

headbolt's being placed into the drive shaft, and there is also some question whether the repair, if made by Keating International, was made pursuant to the manufacturer's warranty. For purposes of this opinion, however, we assume that Keating International did make the repair, that Keating International was negligent in making the repair, and that the repair was covered by the manufacturer's warranty. Given these assumptions, the question presented is whether, under the circumstances in this case, a manufacturer is vicariously liable for a dealer's negligent repair of the manufacturer's product when the repair is covered by the manufacturer's warranty.

Generally, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984); *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). See *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986). Furthermore, control or the right to control is the chief criterion in the determination of whether one acts as an independent contractor. *Herman v. Bonanza Bldgs., Inc., supra*; *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). In addition, one who receives goods from another for resale to a third person is not thereby the other's agent unless the former's duty is to act primarily for the benefit of the one delivering the goods. *Herman v. Bonanza Bldgs., Inc., supra.*

Consistent with these principles is the analysis contained in *Peeples v. Kawasaki Heavy Indust., Ltd.*, 288 Or. 143, 603 P.2d 765 (1979). In *Peeples*, a motorcyclist who was injured in an accident allegedly caused by a loose chain drive slipping off a sprocket sought recovery against the dealer and also the distributor and manufacturer of the motorcycle on the theory that they were vicariously liable for the dealer's negligence in performing service work under the terms of the warranty agreement. The court reviewed the contract between the distributor and the dealer and stated:

> This agreement clearly gives the distributor the right, through its power to set "standards" governing the dealer's method of operation, service, and warranty repair

and its power of immediate termination for the dealer's breach of any of those standards, to control to some degree the physical conduct of the dealer and his employees in the performance of warranty-related service work. If that right exists, we have said that it is not important that the right may not actually have been exercised. [Citations omitted.] In this case there was, however, some evidence that the distributor's right of control was in fact exercised. There was testimony from which the jury could conclude that the distributor furnished the dealer with charts showing how certain adjustments, including adjustments to the drive chain, should be made and that the dealer's mechanics were directed to follow those charts. The jury could also find that the distributor required the dealer's mechanics to attend its training schools and that the distributor periodically sent representatives to visit the dealer's shop to see that instructions were being followed.

288 Or. at 148-49, 603 P.2d at 768. The Supreme Court of Oregon concluded that based upon such evidence, a jury could find that the distributor was vicariously liable for its dealer's negligence in performing service work under terms of the warranty.

The court then considered the prospective vicarious liability of the manufacturer and determined that the manufacturer could not be held liable for the dealer's negligence in servicing the motorcycle. The court stated:

As to the manufacturer, however, we find no comparable evidence in the record. So far as the evidence shows, there is no contractual relationship between the dealer and the manufacturer, and no history of either the exercise of actual control by the manufacturer over the dealer's performance of service work or any recognition by the dealer of the manufacturer's right to exert such control. The failure to grant the manufacturer's motion for directed verdict was error, and the judgment against the manufacturer must be reversed.

288 Or. at 150, 603 P.2d at 769.

With respect to Farmhand, the record contains no evidence

that Farmhand either had a right to control or in fact exercised any control over Keating International with respect to warranty service work which Keating International performed on equipment manufactured by Farmhand. While there may have been some form of dealership contract between Keating International and Farmhand, and while Keating International did receive credit for warranty work which it performed on Farmhand equipment, the record affirmatively shows that Farmhand conducted no seminars or training courses regarding the assembly or the performance of warranty work on equipment which it manufactured. Furthermore, the record contains no evidence that Farmhand did anything more to control the work done by Keating International than to include an assembly and operating manual with the equipment which it shipped to Keating International. Farmhand's inclusion of this manual with the equipment it shipped to Keating International is insufficient to render Farmhand vicariously liable for Keating International's possible negligence in repairing the equipment, even if the repairs were covered under Farmhand's warranty. Consequently, the district court properly granted summary judgment in Keating International's favor.

We acknowledge the appellant's argument regarding the applicability of the Restatement (Second) of Torts § 423 (1978), which is entitled "Making or Repair of Instrumentalities Used in Highly Dangerous Activities." That section states at 410:

> One who carries on an activity which threatens a grave risk of serious bodily harm or death unless the instrumentalities used are carefully constructed and maintained, and who employs an independent contractor to construct or maintain such instrumentalities, is subject to the same liability for physical harm caused by the negligence of the contractor in constructing or maintaining such instrumentalities as though the employer had himself done the work of construction or maintenance.

Relying upon § 423 of the Restatement, *supra*, and *Rager v. Superior Coach Sales & Serv. of Arizona*, 111 Ariz. 204, 526 P.2d 1056 (1974), Kallhoff argues that Farmhand's duty to make warranty repairs was nondelegable and that Farmhand is

therefore liable for Keating International's negligence in making those repairs. In *Rager*, the manufacturer of a bus arranged for the repair of defective brakes on the vehicle under terms of the warranty. The repair was to be done by an independent contractor. Relying upon § 423 of the Restatement, *supra*, the Arizona Supreme Court found that the manufacturer could be held liable for the independent contractor's negligence on the basis that the repair of brakes is "an undertaking which creates a high degree of risk of serious bodily harm" and is, therefore, a nondelegable duty. 111 Ariz. at 211, 526 P.2d at 1063.

Comment *a*. to § 423 of the Restatement, *supra*, states at 410-11:

> The rule stated in this Section is applicable only in those exceptional activities in which an imperfection in their appliances and instrumentalities involves a grave risk of causing serious bodily harm or death. Notwithstanding the great danger which is threatened by the slightest imperfection in the instrumentalities used in them, they are recognized as so generally useful that they are permitted to be carried on without liability unless there is some carelessness in their operation or in the preparation of the appliances and instrumentalities used. They are not carried on at the risk of answering for any harm which results from them, as may be the case of an activity which is abnormally dangerous even if carefully carried on and which is carried on to meet some peculiar need of the persons who conduct them. (See §§ 519 and 520.) However, the danger involved in the inadequacy of the appliances and instrumentalities by which such activities are carried on is so great that those who carry them on are subject to liability for harm caused by any negligence in constructing or maintaining them, irrespective of whether it is their own negligence or that of a contractor employed by them. Such activities stand midway between those which are so little dangerous and of such universal utility that personal fault is necessary to liability and those abnormal activities which are so dangerous even if carefully carried on as to require the imposition of liability

irrespective of negligence.

Thus an electric light or power company which conveys its high voltage electricity over wires upon or close to public highways or privately owned property is carrying on a business which involves great danger of extremely serious harm or death unless its wires are kept properly safeguarded and its other appliances are kept in perfect condition. If it entrusts to an independent contractor the maintenance or repair of its wires or appliances, it remains liable for any harm caused by the contractor's carelessness or incompetence to those who are in the vicinity of the defective wire or appliance. This is true irrespective of whether the person injured is at the time of his injury upon a public highway or is upon land privately owned. Indeed, under such circumstances the electric light or power company is liable even to the possessor of land who has given to the electric light company a license to carry its current over his land.

We believe that the Restatement language clearly contemplates a nondelegable duty in the maintenance or repair of "instrumentalities" which are used by a party in carrying on activity, and not the maintenance or repair of products which are produced by that activity. That is, § 423 of the Restatement, *supra*, may be applicable to instrumentalities used to produce a product, but that section does not apply to issues of product liability or, as in this case, negligence which occurs when repairs are performed under terms of a warranty.

Thus, in this instance, we decline to follow the analysis set forth in *Rager*, and instead adhere to the logic offered by *Peeples v. Kawasaki Heavy Indust., Ltd.*, 288 Or. 143, 603 P.2d 765 (1979). This is not to say that a manufacturer cannot be held to be liable for the negligent repair of its products. Where a manufacturer does exercise a reasonable degree of control over those performing warranty work, negligence in the completion of such work may be attributed to the manufacturer. A manufacturer's vicarious liability in such a case is particularly appropriate when the manufacturer promotes, as an integral part of the product it sells, warranty service by service technicians trained by the manufacturer. Such a representation

may be typified by the marketing of new automobiles. In the present case, however, there is no evidence that Farmhand in any way controlled those performing warranty work on its products, nor is there evidence that Farmhand represented that warranty work would be done by technicians trained by the manufacturer.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., concurring.

The majority assumes that Keating International negligently repaired the stack mover and that the repair was covered by the manufacturer's warranty. Given these assumptions, the majority states that the issue in this case is whether "a manufacturer is vicariously liable for a dealer's negligent repair of the manufacturer's product when the repair is covered by the manufacturer's warranty." The majority concludes that a manufacturer is vicariously liable *only if* the manufacturer has the right to control the dealer, that is, only if the dealer is an actual agent of the manufacturer. I write separately because, given the assumptions of the majority, I believe this rule is too narrow.

A manufacturer's warranty often promises that certain repairs will be performed free of charge. This promise usually requires that the repairs be performed by an authorized dealer. Essentially, the manufacturer leads the purchaser to rely upon the care or skill of the dealer designated by the manufacturer. In most situations, the purchaser does not know the precise relationship between the manufacturer and the dealer; the purchaser assumes that some relationship exists because the dealer is "authorized."

If a manufacturer's warranty holds out a dealer as being authorized to make warranty repairs, then a reasonable person might infer that the dealer is the manufacturer's agent for the purpose of repairs. When a manufacturer's warranty directs the purchaser to a particular dealer, and the dealer performs repairs under the warranty, the manufacturer should be estopped from denying liability for the dealer's negligent repairs. Cf. Restatement (Second) of Agency § 267 (1958).

In the present case, there is no evidence that the

manufacturer's warranty instructed Kallhoff to have repairs made by an authorized dealer, and no evidence that Kallhoff relied on the manufacturer's warranty when seeking repairs. In his deposition, Kallhoff testified that he did not receive any warranty materials and did not recall any discussions with the dealer regarding warranty materials. Furthermore, the manufacturer's manual which accompanied the stack mover requires that to be eligible for warranty, a warranty registration form must be filed with the manufacturer within 5 days of delivery. There is no evidence that Kallhoff complied with these requirements.

I therefore concur in the result.