SALLOUM FOODS & LIQUOR, INC., d/b/a Certified Foods, Inc., Plaintiff-Appellant, *v.* PARLIAMENT INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 77-1665

Opinion filed February 22, 1979.—Rehearing denied March 20, 1979.

Robert J. Egan, of Chicago (Terrence R. Lyons, Jr., of counsel), for appellant.

Conklin, Leahy & Eisenberg, Ltd., of Chicago (Daniel J. Leahy and Franklin A. Nachman, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

On October 29, 1976, plaintiff, Salloum Foods & Liquor, Inc. (Salloum Foods), filed an action in the circuit court of Cook County against defendant, Parliament Insurance Co. (Parliament), seeking recovery, under a policy of insurance, for losses it allegedly incurred as a result of a September 18, 1975, robbery. The trial court granted Parliament's motion for summary judgment holding that Salloum Foods' suit was not filed within the insurance policy's one-year limitation period. Salloum Foods appeals, contending Parliament either waived the one-year limitation period or is estopped from relying upon it.

We reverse the trial court and remand this case for further proceedings.

On January 10, 1975, Parliament issued to Salloum Foods, a one year robbery and vandalism insurance policy. Pursuant to the terms of this insurance policy, Parliament apparently agreed[1] to idemnify Salloum Foods against robbery and vandalism loss in connection with Salloum Foods' business operation on the premises at 935 East 79th Street in Chicago, Illinois.

Salloum Foods claims that as a result of a September 18, 1975, robbery, it lost merchandise and currency amounting to $15,158 and also

---

[1] A copy of the insurance policy is not part of the record on appeal.

incurred property damage in the amount of $850. Salloum Makhamre, the principal stockholder of Salloum Foods, Inc., promptly notified Parliament of the September 18, 1975, robbery loss. He then entered into negotiations with Craig Ramsay of L. J. Shaw & Co., Parliament's claims adjuster, in an attempt to settle the insurance claim. In early October 1975, Makhamre executed and presented Ramsay with a notice of loss form, itemizing the merchandise and currency allegedly stolen and the property damage allegedly incurred in the robbery.

On November 1, 1975, shortly after the start of the settlement negotiations, Salloum Foods was sold and its robbery and vandalism insurance policy with Parliament cancelled. Sometime thereafter, Haines-Craft Insurance Agency, Salloum Foods' insurance agent, requested and obtained from Makhamre the copy of the robbery and vandalism insurance policy which had been issued to Salloum foods by Parliament. Haines-Craft Insurance Agency, at Parliament's request, forwarded the policy to Parliament.

In an affidavit filed in the trial court, Makhamre asserts that, at an early point in the settlement negotiations, "the adjuster" (apparently referring to Ramsay) offered to settle the store's insurance claim for an (unstated) sum which amounted to less than one-half of Salloum Foods' $16,008 claimed loss.[2] Makhamre rejected this proposed settlement.

In connection with their ongoing negotiations, Ramsay sent Makhamre a certified letter on December 8, 1975. This letter states in relevant part:

> "Dear Mr. Makhamre:
>
> As you know I represent the Parliament Insurance Company with regard to the above captioned loss. To date I have not received the proper claim presentation as I have repeatedly requested. Your insurance policy includes coverage for vandalism and robbery occurrences. You and your store sustained a burglary *attempt* and there was apparently some type of vandalism loss at the insured location. You therefore only have vandalism coverage for the above captioned occurrence. My initial inspection and contact with you on September 22, 1975 resulted in my finding very little visible evidence of an extensive vandalism loss. My follow-up contacts and inspections on October 16 and 29, 1975 again did not produce the desired claim presentation which I requested from you.
>
> * * *
>
> I now turn your attention to *the enclosed portion of your policy*,

---

[2] It should be noted that this affidavit, which is part of the record on appeal, is neither signed nor verified. However, in light of our disposition of this case, we need not consider the ramifications of this deficiency.

specifically, lines 90 through 122. This section describes your contractual duties when a loss occurs. Please read these 32 lines carefully and be advised that I will extend the time for filing proof of loss to and including January 8, 1976. Please call or consult with me if you do not understand any word or phrase in these 32 lines which outlines your requirements in case a loss occurs.

*I have been in contact with your attorney, Mr. Edmond Mosley,*[3] and he does understand the policy requirements as noted above and I also reiterated to him that the policy specifically states "the insured shall keep records of all the insured property in such a manner that the company can accurately determine therefrom the amount of loss." *Unless you can substantiate the amount of merchandise and the amount of loss through proper store records, I am in no position to recommend any type of loss adjustment and claim payment to your company."* (Emphasis added.)

Attached to Ramsay's December 8 letter was part of an insurance policy. While Ramsay, in his letter, referred to this attachment as if it was copied directly from Salloum Foods' own robbery and vandalism insurance policy, Parliament admits and a reading of the attachment indicates that it was copied, instead, from a standard fire insurance policy form.

Lines 90-122 of the attached portion of the standard fire insurance policy, which were called to Makpamre's attention by Ramsay's letter, set forth an insured's contractual obligation to furnish proof of alleged losses. While *not* referred to by Ramsay, contained elsewhere within that portion of the standard fire insurance policy sent to Makhamre, was a one year limitation provision:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after inception of the loss."

On January 22, 1976, Ramsay sent to Makhamre, by certified mail, a follow-up letter. This letter states in pertinent part:

"I regret to inform you that on January 8, 1976, time expired with regard to the extension of time for submitting proof of loss to your company which I granted in my letter of 12/8/75.

You have failed to substantiate any portion of your alleged vandalism loss. You have not made any effort to comply with the policy requirements which outlines your duties and responsibilities when a loss occurs. I specifically sent you this portion of your policy in my letter of 12/8/75. * * *

---

[3] Salloum Foods argued in its brief that Makhamre was not represented by counsel during negotiations with Ramsay. However, this letter indicates that Makhamre was represented by an attorney named Edward Mosley.

I have notified your company of these findings and see no reason to maintain an open file."

Sometime in February or March 1976, Makhamre discharged his previous counsel and hired attorney Thomas O'Brien to represent him in connection with Salloum Foods' insurance claim. On April 26, 1976, O'Brien sent Ramsay the following letter:

"RE: MAKHAMRE, Salloum
    Vandalism and burglary occurrent [sic] 9/18/75
    Location: 935-37 East 79th Street

Dear Mr. Ramsay:

Enclosed please find one of the items of special damages in the above captioned file. We are looking forward to a conference with you to adjust this matter."

In response to this letter, Ramsay wrote O'Brien on April 30 informing him that the file on Salloum Foods' claim had "been closed for quite some time" and that he (Ramsay) had no authority to discuss the matter with O'Brien without first receiving permission from Parliament to reopen the file. Ramsay went on to state in his letter:

"In view of the fact that the insured failed to comply with the policy provisions and failed to substantiate any portion of his alleged loss, I must direct you to Mr. Hayes of the Parliament Insurance Company so that he may make a decision as to whether or not this can be given any further attention."

In the early part of July 1976, Makhamre discharged O'Brien and hired the firm of Egan and Keane. On August 12, 1976, attorney Robert Egan sent Haines-Craft Insurance Agency the following letter:

"Please be advised that * * * (I) represent Salloum Makhamre relative to a theft loss at his store located at 935-37 East 79th Street, Chicago, Illinois.

It is my understanding that he has forwarded his insurance policy to you through his former attorney, Thomas C. O'Brien and subsequent to that, *the company has denied coverage.*

*I would appreciate very much your returning the policy to me* and informing me relative to your position in this matter at your earliest convenience. Perhaps we can avoid a lawsuit." (Emphasis added.)

The insurance agency informed Egan that it had forwarded Salloum Foods' copy of the insurance policy to Parliament, and referred Egan to Ramsay, Parliament's claims adjuster.

On August 24, 1976, Egan sent Ramsay the following letter:

"Please be advised that * * * [I] represent Salloum Makhamre relative to a theft loss at his store. Enclosed is a copy of my letter to William Davis of Haines-Craft Insurance agency. In response to

that letter, I received photocopies of two documents which are also enclosed.[4] *I would like to obtain a copy of the policy that was in effect at the time of the loss.*

*It is my understanding that you have denied coverage relative to this loss and that you have so recommended that position to Parliament Insurance Company.* Please be advised that because I have not represented the claimant from the beginning, I would have some hope that you would communicate a change in this position to me and if not, it will be necessary to institute legal proceedings to clear up this matter.

If I do not hear from you within a reasonable time, it will be necessary to file a lawsuit naming not only the insurance company but the agency and yourself as well." (Emphasis added.)

No answer was ever received by Egan or Makhamre in response to this letter.

On October 29, 1976, over one year from the September 18, 1975, robbery, Salloum Foods filed this action against Parliament seeking to recover its policy claim. In February 1977, Salloum Foods in response to a discovery request, obtained a copy of the robbery and vandalism insurance policy from Parliament. As noted previously, this policy is not parl of the record on appeal.

Parliament filed its motion for summary judgment contending that Salloum Foods' complaint was not filed within the insurance policy's one year limitation period. In response, Salloum Foods contended that Parliament had either waived the policy limitation period or was estopped from relying upon it. After considering memoranda and arguments of counsel, the trial court granted Parliament summary judgment and dismissed this action filed by Salloum Foods.

Salloum Foods appeals.

OPINION

An insurance company can waive the limitation provision of an insurance contract, or, by its conduct, become estopped from invoking the provision as a defense to an action on the policy. 20A Appleman, Insurance Law and Practice §11637 (1963); 44 Am. Jur. 2d *Insurance* §1916 (1969); Annot., 29 A.L.R.2d 636 (1953); see, *e.g., Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 373 N.E.2d 1027; *Whitaker v. Illinois Medical Service* (1972), 7 Ill. App. 3d 764, 288 N.E.2d 631.

■■ In the context of insurance law, and especially with regard to

---

[4] These documents: (1) indicated Salloum Foods had cancelled its policy with Parliament in November of 1975; and (2) referred Egan to Ramsay.

limitation provisions in insurance policies, the terms "waiver" and "estoppel" have often been used without careful distinction, and thereby abused and confused. (16A Appleman, Insurance Law and Practice §9081 (1968); Annot., 29 A.L.R.2d 636, 639 (1953); see, *e.g.*, *Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 150 N.E. 256; *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 870-71, 373 N.E.2d 492, 495 (Moran, J., dissenting).) This doctrinal confusion, epitomized by the frequently echoed phrase "waiver by estoppel",[5] is so deeply rooted some courts have suggested that the term waiver, as applied in Illinois to insurance cases is simply another name for estoppel. *Phenix Insurance Co. v. Grove* (1905), 215 Ill. 299, 74 N.E. 141; *Adam v. Columbian National Life Insurance Co.* (1920), 218 Ill. App. 54, 74 (O'Connor, J., concurring); see *Stahly Cartage Co. v. Universal Mutual Casualty Co.* (1956), 11 Ill. App. 2d 365, 138 N.E.2d 243; 7 Blashfield, Automobile Law & Practice §303.6, at 425 (3d ed. 1966).

Notwithstanding the confusion already engendered by many of these cases, it is elementary that waiver and estoppel are two separate and distinct doctrines. (*Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 870-73, 373 N.E.2d 492, 494-97 (Moran, J., dissenting); *Adam v. Columbian National Life Insurance Co.* (1920), 218 Ill. App. 54; *Morgan v. International Aviation Underwriters, Inc.* (1967), 250 Cal. App. 2d 176, 58 Cal. Rptr. 164; *Great American Insurance Co. v. General Insurance Co. of America* (1970), 257 Ore. 62, 475 P.2d 415; *Diamon v. Penn Mutual Fire Insurance Co.* (1977), 247 Pa. Super. 534, 372 A.2d 1218; *Burr v. Lane* (1974), 10 Wash. App. 412, 517 P.2d 988; see 16A Appleman, Insurance Law and Practice §9081, at 281-83 (1968); 43 Am. Jur. 2d *Insurance* §1054, at 977-78 (1969).) The fact that these doctrines are closely akin and often may coexist does not mean they are identical in connotation.

▪▪ Waiver encompasses either an express or an implied (see *Beggs v. Supreme Council Catholic Knights & Ladies of America* (1909), 146 Ill. App. 168, 172; *Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 221 N.E.2d 293; 22 Ill. L. & Prac. *Insurance* §526, at 573 (1956)) voluntary and intentional relinquishment of a known and existing right (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521; 20A Appleman, Insurance Law and Practice §11637, at 29-31 (1963); 18 Couch on Insurance §75:178, at 821 (2d ed. 1968); 43 Am. Jur. 2d *Insurance* §1053 (1969)). Waiver is essentially unilateral in character, focusing only upon the acts and conduct of the insurer.

---

[5] This phrase, which traces back to *Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 150 N.E. 256, is "confusing and tends to blur the useful distinction between waiver and estoppel." *Reed v. Commercial Insurance Co.* (1967), 248 Ore. 152, 155, 432 P.2d 691, 693.

Prejudice to, or detrimental reliance by, the insured is *not* required. *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521; *Peterson v. United States Building Maintenance Co.* (1968), 96 Ill. App. 2d 398, 239 N.E.2d 322; *Cox v. American Insurance Co.* (1913), 184 Ill. App. 419, 424; *Great American Insurance Co. v. General Insurance Co. of America* (1970), 257 Ore. 62, 475 P.2d 415.

■■■ Equitable estoppel, on the other hand, generally is based upon an insurance carrier's conduct and/or representations which mislead an insured to his detriment. (See *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302; 16A Appleman, Insurance Law & Practice §§9081, 9088; 18 Couch on Insurance §75:180 (2d ed. 1968); 43 Am. Jur. 2d *Insurance* §1053, at 977 (1969).) Thus, if an insurance carrier's investigation and/or negotiation of a policy claim reasonably induces within the insured a false sense of security—namely, that the claim will be settled without suit—and the insured, in reliance thereon, foregoes filing suit during the policy's limitation period, the insurance carrier is estopped from later raising the limitation provision as a defense to an action on the policy. *Peoria Marine & Fire Insurance Co. v. Whitehill* (1861), 25 Ill. 382; *Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 373 N.E.2d 1027.

It is not necessary that the insurer intentionally mislead or deceive the insured, or even intend by its conduct to induce delay. (See *Moline I.F.C. Finance, Inc. v. Soucinek* (1968), 91 Ill. App. 2d 257, 234 N.E.2d 57; *Bomba v. W. L. Belvidere, Inc.* (7th Cir. 1978), 579 F.2d 1067; *United States v. Fidelity & Casualty Co.* (4th Cir. 1968), 402 F.2d 893, 897-98; *Melhorn v. Amrep Corp.* (M.D. Pa. 1974), 373 F. Supp. 1378, 1380-81.) All that is necessary is that the insured reasonably relies on the insurer's representations or conduct in forebearing suit.

## I

Salloum Foods initially contends that a material question of fact exists with regard to whether Parliament, by investigating and negotiating the store's insurance claim, either waived the policy's limitation provision or became estopped from relying upon it as a defense to this action on the policy. We disagree.

■■ The one-year limitation provision was not *expressly* waived by Parliament and, in our view, an intention to waive can not reasonably be *implied* from Parliament's investigation and negotiation of Salloum Foods' insurance claim. Parliament's alleged nominal settlement offer, made to Salloum Foods at an early stage in the negotiations, does not, in and of itself, support a finding of waiver (*Allemania Fire Insurance Co. v. Peck* (1890), 133 Ill. 220, 24 N.E. 538; *Phoenix Insurance Co. v. Lebcher* (1886), 20 Ill. App. 450; 20A Appleman, Insurance Law and Practice

§11639, at 42 (1963)) nor does it raise a material question of fact which would preclude the entry of summary judgment.

Similarly, we find *no basis* for the contention that by investigating and negotiating the store's insurance claim, Parliament should be equitably estopped from raising the contractual limitation provision as a defense to Salloum Foods' action on the policy.

Parliament's claims adjuster, Craig Ramsay, notified Salloum Foods, in December 1975, that unless it substantiated the alleged losses arising from the September 18, 1975, robbery, Salloum Foods' insurance claim would not be paid. Subsequently, on January 22, 1976, Ramsay wrote Salloum Foods, stating:

> "You have not made any effort to comply with the policy requirements which outlines your duties and responsibilities when a loss occurs. * * * I have notified [Parliament] of these findings and see no reason to maintain an open file."

Ramsay reiterated this rejection of Salloum Foods' insurance claim on April 30, 1976, in a letter to Thomas O'Brien, Salloum Foods' attorney. ▪ Following Ramsay's April 1976 letter, a substantial period of time remained for Salloum Foods to file suit within the policy's one-year limitation period. Neither Parliament nor its claims adjuster did anything thereafter to induce Salloum Foods to believe that its claim would be settled without suit. When the alleged inducement for delay, in this instance Parliament's investigation and negotiation of Salloum Foods' insurance claim, has ceased to operate prior to the expiration of the policy's limitation period, so as to afford the insured a reasonable period of time within which to file suit, the insured's failure to institute such an action within the policy's remaining time period can not be excused on the grounds of equitable estoppel. *Midwest Triangle Paint Works, Inc. v. Firemen's Insurance Co.* (1962), 36 Ill. App. 2d 65, 183 N.E.2d 562; *Phoenix Insurance Co. v. Lebcher* (1886), 20 Ill. App. 450; Annot., 29 A.L.R.2d 636, 650 (1953); see *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860; Annot., 39 A.L.R. 3d 127, 143 (1971); Annot., 44 A.L.R.3d 760, 764 (1972).

## II

Salloum Foods next contends that Parliament should be barred, as a matter of law, from invoking the limitation provision as a defense because Parliament refused to return to Salloum Foods a copy of the insurance policy. We agree.

Parliament issued the robbery and vandalism insurance policy to Salloum Foods on January 10, 1975. On September 20, 1975, Salloum filed its claim, alleging that it suffered property damage and inventory

losses as a result of a September 18, 1975, robbery. Sometime in early October of that same year, Salloum Makhamre, the principal stockholder of Salloum Foods, Inc., entered into negotiations with Ramsay, Parliament's claims adjuster, in an attempt to settle the insurance claim.

On November 1, 1975, during the very infancy of these negotiations, Salloum Foods was sold and its insurance policy with Parliament cancelled. Haines-Craft Insurance Agency, Salloum Foods' insurance agent, subsequently requested that Makhamre return the policy which had been issued to Salloum Foods' by Parliament. Makhamre complied with this request and Haines-Craft Insurance Agency then forwarded the policy to Parliament. Parliament's attorney stated during oral argument that requesting an insured to return his copy of a cancelled policy was standard procedure.

A dispute subsequently arose as to the adequacy of Salloum Foods' proof of loss in connection with its insurance claim. As a result of this controversy, the negotiations between Ramsay and Makhamre broke down in January 1976. After attempting unsuccessfully to revive the negotiations, Makhamre, through his attorney Robert Egan, wrote Haines-Craft Insurance Agency, on August 12, 1976, requesting the return of Salloum Foods' copy of the robbery and vandalism insurance policy. Haines-Craft notified Egan that it had forwarded the policy to Parliament, and referred Egan to Ramsay, Parliament's claims adjuster. Egan wrote Ramsay on August 24, 1976, requesting "a copy of the policy that was in effect at the time of the loss." This letter went unanswered. Salloum Foods filed suit against Parliament on October 29, 1976, over one year from the September 18, 1975 robbery.

The issue presented is whether Parliament's failure to redeliver the policy to Salloum Foods bars its invocation of the one year limitation provision as a defense. In *Union Fire Insurance Co. v. Stone* (1930), 41 Ga. App. 49, 152 S.E. 146, the insured had returned his fire insurance policy to the agent of the insurer in order to have a "loss payable" clause attached. While the contract was in the insurance company's possession, the property covered by the policy was destroyed by fire. Following notification of this loss, the insurer rejected the insured's request for a return of the policy. The insured then filed suit against the insurer, but only after the policy's one-year limitation period had expired. In affirming a judgment for the insured, the appellate court held that the insurer was barred from raising the limitation provision as a defense to the action on the policy:

> "[T]he conduct of the company in refusing to redeliver the policy to the insured, * * * will operate to estop the company from relying upon this [one year limitation] provision * * * in a suit

brought by the insured * * * more than twelve months after the loss occurred * * *." (*Union Fire Insurance Co. v. Stone* (1930), 41 Ga. App. 49, 152 S.E. 146, 147.)

See also *Fredericks v. Farmers Reliance Insurance Co.* (1963), 80 N.J. Super. 599, 194 A.2d 497; *Heezen v. Hartland Cicero Mutual Insurance Co.* (1974), 63 Wis.2d 449, 217 N.W.2d 272; *Greater Providence Trust Co. v. Nationwide Mutual Fire Insurance Co.* (1976), 116 R.I. 268, 355 A.2d 718 (*dicta*); 20A Appleman, Insurance Law and Practice §11637 (1978 Supp.); *cf. Bass v. Standard Accident Insurance Co.* (4th Cir. 1934), 70 F.2d 86; *Bonfini v. Nationwide Mutual Fire Insurance Co.* (1960), 85 Ohio L. Abs. 545, 175 N.E.2d 322; *Advanced Methods, Inc. v. Grain Dealers Mutual Insurance Co.* (7th Cir. 1960), 274 F.2d 634.

The general principle espoused by the above authorities is exemplified by the following statement in *Fredericks v. Farmers Reliance Insurance Co.* (1963), 80 N.J. Super. 599, 602, 194 A.2d 497, 499:

"As a matter of fairness and logic [estoppel] should apply to a case where an insurance company invokes against its insured the defense of a limitations condition fixed by the policy to which the insured has not had the opportunity to be alerted because the company has unjustifiably withheld the policy from him."

Parliament contends that Salloum Foods *was* informed of the one year limitation provision in its robbery and vandalism insurance policy and, therefore, Parliament is not barred from raising this clause as a defense.

In his letter of December 8, 1975, Ramsay informed Salloum Foods that unless adequate proof of loss was presented, its insurance claim would be denied. Attached to this letter, was part of a standard fire insurance policy form. Ramsay specifically directed Salloum Foods' attention to lines 90-122 of this attachment, which set out an insured's contractual obligation to furnish proof of alleged losses. Although *not* referred to by Ramsay, contained elsewhere within that portion of the standard fire insurance policy form was a one-year limitation provision.

We have serious reservations whether this attachment was sufficient to inform Salloum Foods that a similar one-year limitation clause was set forth in its own robbery and vandalism insurance policy. However, we need not resolve that issue, for, in our view, Salloum Foods had more than just a right to be informed of its policy's limitation provision; Salloum Foods had a right to a return of its entire insurance policy.[6]

---

[6] Parliament cites *Trichelle v. Sherman & Ellis, Inc.* (1930), 259 Ill. App. 346, *Lawson v. Fayart* (1934), 274 Ill. App. 88, and *Advanced Methods, Inc. v. Grain Dealers Mutual Insurance Co.* (7th Cir. 1960), 274 F.2d 634, for the proposition that an insurance company is not obligated to honor an insured's request for a return of his insurance policy. Those three cases, however, do not stand for such a proposition and are clearly distinguishable. The true

By emphasizing the special nature of the insurance relationship modern authorities have transcended the concept of strict contract law and fastened upon insurance companies a heavy obligation of utmost good faith when dealing with insureds. Dean Pound pointed out this characteristic of insurance law when he wrote:

"[I]n the purely judicial development of our law we have taken * * * insurance practically out of the category of contract, and we have established that the duties of public service companies are not contractual, as the nineteenth century sought to make them, but are instead relational." R. Pound, The Spirit of the Common Law 29 (1921).

■ As a simple matter of fairness and logic, and in keeping with the modern view that an insurer must deal fairly and in good faith with its insureds, we conclude that Salloum Foods had a right to a copy of its entire insurance policy. Parliament's unjustified and unexplained refusal to provide Salloum Foods with a copy of the policy, occasioned Salloum Foods' delay in filing suit. Consequently, we conclude that Parliament is equitably estopped from raising the limitation provision as a defense to Salloum Foods' action on the policy.

Parliament's suggestion, that Salloum Foods should have *immediately* filed suit and obtained a copy of its policy through discovery, lacks merit. Salloum Foods requested and had a right to a return of its policy in order that it could ascertain, upon an informed basis, whether its insurance claim merited litigation.

Accordingly, for the reasons stated, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.

---

principle espoused by *Trichell* (see *Trichelle v. Sherman & Ellis, Inc.* (1930), 259 Ill. App. 346, 356-57) has not been argued by Parliament on this appeal and, in any event, is inapplicable to this case (*Harris Trust & Savings Bank v. Illinois Fair Plan Assoc.* (1979) 68 Ill. App. 3d 934, ___ N.E.2d ___; *Beck v. Capital Life Insurance Co.* (1977), 48 Ill. App. 3d 937, 363 N.E.2d 170).