AUTO–OWNERS INSURANCE COMPANY, Appellant/Defendant,

v.

Gary HUGHES, Appellee/Plaintiff.

No. 18A02–1006–PL–659.

Court of Appeals of Indiana.

March 1, 2011.

Rehearing Denied May 11, 2011.

---

Charles T. Jennings, Thomas R. Haley, III, Jeffrey W. Ferrand, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellant.

Jason R. Delk, Daniel J. Gibson, Delk McNally LLP, Muncie, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Auto–Owners Insurance Company appeals following the entry of judgment in favor of Appellee/Plaintiff Gary Hughes on his contract claim in the amount of $166,792.83. Auto–Owners contends, *inter alia,* that the trial court erred in denying its summary judgment motion on the basis that Hughes's suit was barred by a one-year limitation in the relevant insurance policy. We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On March 19, 2002, an arson fire destroyed Hughes's home in Eaton, which was insured at the time by Auto–Owners. Among the provisions of the insurance policy ("the Policy") were that Auto–Owners "may not be sued unless there is full compliance with all the terms of the policy. **Suit** must be brought within one year after the loss or damage occurs." Appellant's App. p. 139. Hughes hired Steve Lipke of Public Adjustment Bureau ("PAB") as a public adjuster, and Lipke acted as Hughes's agent during relevant portions of the claims process. On January 23, 2003, Auto–Owners denied Hughes's claim due to "arson[,] fraud[,] misrepresentation[,] false swearing[, and] lack of the determination of ownership and/or an insurable interest." Appellant's App. p. 252.

On May 7, 2003, more than one year after the fire, Hughes filed a complaint against Auto–Owners. On May 29, 2003, Hughes filed an amended complaint against Auto–Owners, alleging breach of contract, tortious breach of duty to act in good faith, constructive fraud, and equitable estoppel. On July 9, 2003, Hughes filed a motion for partial summary judgment. On September 8, 2003, Auto–Owners filed a cross-motion for summary judgment on the basis that Hughes had failed to sue it within one year of the loss and that it had not waived the Policy's one-year suit provision. On January 26, 2004, the trial court denied Hughes's motion for partial summary judgment and Auto–Owners's cross-motion for summary judgment.

On July 18, 2006, Auto–Owners filed a second motion for summary judgment, again on the basis that Hughes's suit should be barred by the one-year limitation in the Policy and relying on new designated evidence. After a hearing, the trial court also denied Auto–Owners's second summary judgment motion. At trial, following Hughes's presentation of evidence, Auto–Owners moved for judgment on the evidence on Hughes's bad faith and punitive damages claims as well as its one-year-limitation defense. The trial court entered judgment on the evidence in favor of Auto–Owners on Hughes's punitive damages claim but denied its motion as to his bad faith claim and its one-year-limitation defense. After trial, a jury awarded Hughes damages of $166,792.83 on his contract claim.

## DISCUSSION AND DECISION

A potentially dispositive issue in this case is whether Auto–Owners should be estopped from asserting the one-year limitation contained in the Policy, as it is undisputed that Hughes failed to bring suit within one year of the loss. Hughes contends that (1) Auto–Owners had a duty to provide him with a copy of the policy upon request and (2) there is a genuine issue of material fact regarding whether it did so. Auto–Owners contends that it should not be estopped from asserting the one-year defense because (1) it had no duty to provide a copy of the Policy to Hughes upon request, and that, even if it had such a duty, (2) the undisputed designated evidence indicates that it did provide Hughes with a copy.

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### I. Whether Auto–Owners had a Duty to Provide Hughes With a Copy of the Policy

Hughes contends that Auto–Owners should be estopped from asserting the one-year-limitation in the Policy as a defense if it refused to provide him a copy upon request following the fire.

"It is well established in Indiana that, while not favored, . . . contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." *Schafer v. Buckeye Union Ins. Co.*, 178 Ind.App. 70[, 74], 381 N.E.2d 519, 522 (1978). The "purpose of such provisions concerns not a specific date following the loss but unreasonable delay in proceeding to enforce or pursue the claim." *Id.* at 523 n. 5. That is, these limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates. *Id.* at 523. *Summers v. Auto–Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind.Ct.App.1999).

We have held that an insurance company generally "ha[s] no duty to inform [an insured] of his responsibilities under the insurance contract or that it intended to assert the one-year limitation of action provision as a defense." *Stateman Ins. Co. v. Reibly*, 175 Ind.App. 317, 321, 371 N.E.2d 414, 416 n. 4 (Ind.Ct.App. 1978). Nonetheless, Indiana courts have recognized that there are circumstances under which such limitations will not be enforced. "Such limitations provisions may be waived either expressly or impliedly." *Id.* (citing *Schafer*, 178 Ind.App. at 74, 381 N.E.2d at 522). " 'A waiver or estoppel may result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy.' " *Id.* at 414–15 (quoting *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 423, 363 N.E.2d 985, 991 (1977)).

The question before us today is whether principles of equity and fairness create a limited duty to provide a copy of an insurance policy when the insured has requested one following a loss such that failure to discharge that duty would prevent an insurance company from asserting noncompliance with policy terms as a defense in subsequent litigation. We have little trouble answering in the affirmative, as has every other court that has addressed this question.

In the case of *Thompson v. Traders' Insurance Co.*, the defendant insurance company sought to raise the defense that Thompson had failed to provide it with a proof of loss that conformed to the policy's requirements. 169 Mo. 12, 68 S.W. 889, 890–91 (1902), *overruled in part on other grounds by Alexander v. Chicago, Milwaukee & St. Paul Ry. Co.*, 282 Mo. 236, 221 S.W. 712, 719 (1920). The insurance company, however, had refused to provide Thompson a copy of the destroyed insurance policy when he requested one. *Id.* at 891. The Missouri Supreme Court concluded that this conduct amounted to a waiver of insistence on compliance with the policy's proof of loss requirements:

> The plaintiff demanded a copy of the destroyed policy, and the defendant refused to give it to him. No one else could furnish it. These circumstances and this conduct of the defendant clearly amount to a waiver of the requirements of the policy to furnish any other kind of a proof of loss, and estop the defendant from setting up any such defense.

*Id.*

In *Union Fire Insurance Co. of Paris, France v. Stone*, the insurance company sought to rely on a one-year filing limitation after it had refused to provide Stone with a copy of the policy. 41 Ga.App. 49, 152 S.E. 146, 147 (1930). The Court of Appeals of Georgia concluded that

> the conduct of the company in refusing to redeliver the policy to the insured, who is thereby kept in ignorance of the

provision of the policy requiring a suit thereon within twelve months after loss, will operate to estop the company from relying upon this provision of the policy in a suit brought by the insured against the company more than twelve months after the loss occurred and within twelve months after the insured became aware of the existence of this provision of the policy.

*Id.*

The *Stone* court went on to observe that [a]lthough the relative rights of the insured and the company, existing under the policy, are determinable by the contents of the policy, irrespective of the fact that one of the parties may be actually ignorant of the contents of the policy, the insured's ignorance of the contents of the policy will nevertheless not necessarily operate to prevent him from invoking against the company the doctrine of equitable estoppel against the enforcement by the company of a right which it may have under the policy. Where the necessity for an assertion by either party of a right under the policy does not arise until after the insured has parted with possession of the policy, the company, in equity and good conscience, cannot afterwards, while wrongfully withholding the policy from the insured, assert a right which, under the terms of the policy, would not have accrued to it but for the conduct of the insured after he had parted with the possession of the policy, and the accrual of which right to the company the insured, but for his ignorance of the contents of the policy, could have prevented.

*Id.*

■ This rule has also been adopted by the Supreme Courts of Rhode Island and Wisconsin and intermediate appellate courts in New York, Illinois, and New Jersey. *See Greater Providence Trust Co. v. Nationwide Mut. Fire Ins. Co.*, 116 R.I. 268, 355 A.2d 718, 721 (1976); *Heezen v. Hartland Cicero Mut. Ins. Co.*, 63 Wis.2d 449, 217 N.W.2d 272, 275 (1974); *C.I.T. Leasing Corp. v. Travelers Ins. Co.*, 145 A.D.2d 973, 536 N.Y.S.2d 344, 345 (1988); *Salloum Foods & Liquor, Inc. v. Parliament Ins. Co.*, 69 Ill.App.3d 422, 26 Ill.Dec. 399, 388 N.E.2d 23, 31 (1979); *Fredericks v. Farmers Reliance Ins. Co. of N.J.*, 80 N.J.Super. 599, 194 A.2d 497, 499 (1963). Today, we join those courts and likewise conclude that, in the interests of fairness, practicality, and the resolution of disputes on the merits, an insurance company has a limited duty to provide its insured with a copy of the relevant policy upon request following a loss. If the insurer fails to do so, it may be estopped from asserting noncompliance with policy terms a defense.

It does not seem too much to ask that an insurance company provide an insured a copy of the policy upon request following a loss, given that there would almost certainly be no other way to procure a copy, and delivery could be accomplished with very little inconvenience or cost to the insurance company. We think that this rule reflects the realities of the typical relationship between an insurance company and an insured, at least when the insured is a private individual. Very few insureds will ever read, much less attempt to understand, their insurance policies, unless, of course, they happen to suffer a loss. We also venture to guess that very few homeowners will ever take the precaution of storing a copy of their policy at a secure location outside of the home, making it that much more likely that a copy will be destroyed in a loss and not be available when needed most. Additionally, this result is consistent with and advances Indiana's strong preference that cases be decided on their merits. *See Coslett v. Weddle Bros. Const. Co., Inc.*, 798 N.E.2d

859, 861 (Ind.2003) ("Indiana law strongly prefers disposition of cases on their merits."). We therefore conclude that, following a loss, an insurer must provide a copy of an insurance policy to the insured upon request or be estopped from raising noncompliance with policy terms as a defense in subsequent litigation.[1]

## II. Whether There is a Genuine Issue of Material Fact Regarding Whether Auto–Owners Provided Hughes With a Copy of the Policy

Auto–Owners contends that there is no genuine issue of material fact regarding whether it provided a copy of the Policy to Hughes or his agents upon request.

The key terms "material" and "genuine" have been defined:

"A fact is material where its resolution is decisive of the action or a secondary issue." *Lee v. Weston*, (1980) Ind.App., 402 N.E.2d 23, 24. "(A) factual issue is 'genuine' if it is not capable of being conclusively foreclosed by reference to undisputed facts." *Stuteville v. Downing*, (1979) [181] Ind.App. [197], 391 N.E.2d 629, 631.

*Matter of Belanger's Estate*, 433 N.E.2d 39, 42 (Ind.Ct.App.1982).

We conclude that we can conclusively foreclose the question of whether Auto–Owners provided Hughes or one of his agents a copy of the Policy by reference to undisputed designated evidence. Auto–Owners claims manager Rashelle Hall averred that she received a request for a copy of the Policy from Lipke, Hughes's agent, on April 3, 2002, and sent him a copy on April 11, 2002, less than a month after the loss. Auto–Owners also desig-

nated Hall's log notes indicating that she "sent copy of policy to public adjuster" on April 11, 2002. Appellant's App. p. 930. Finally, Hall averred that she never received another request for a copy of the Policy. Auto–Owners has therefore designated evidence establishing that it discharged its duty to provide Hughes's agent with a copy of the Policy when requested, and the burden is now on Hughes to establish that a genuine issue of material fact exists on this question. This he has failed to do.

Hughes designates no evidence contradicting Auto–Owners's evidence that Hall sent Lipke a copy of the Policy upon request or tending to show that Lipke failed to receive it. While evidence that Lipke never received a copy of the Policy might generate a genuine issue as to whether it was actually sent, Lipke does not deny receiving a copy of the Policy in his deposition testimony, and, if anything, comes very close to affirmatively admitting that he did. During Lipke's May 17, 2006, deposition, the following exchange took place:

Q. Okay. And if [the owner of PAB's] file shows that [a copy of the Policy] was in your file, you're not denying that you got it, are you?

A. No.

Q. Okay. And if Auto Owners' records show that they mailed you a copy, this particular copy of this policy to [PAB] based upon their, the request that was made in April of the year of the fire, would you dispute that?

A. No.

Q. Okay. So you think you actually have seen this homeowner insurance policy?

**1.** We wish to emphasize that the rule we adopt today applies *only* to insurance contracts. *See D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid–S, Inc.*, 916 F.Supp. 1571, 1578 (S.D.Ga.1995) *aff'd sub nom. Lee & Sons v. ADT Sec. Sys.*, 77 F.3d 498 (11th Cir.1996) ("ADT is not an insurer of LEE nor is there any duty to provide them with a copy of the contract").

A. It's hard for me to say at this point because it's so long ago. We always, as a company, [PAB] requested copies of policies.

Q. Okay.

A. We didn't always get the policies, but most often we did, so I'm assuming we did receive it. Auto Owners, that I can recall, was pretty good at sending policies out.

Q. Okay. There wouldn't be any reason for you to say that you didn't get a copy of the policy that you're aware of?

A. No, not unless there's a letter in my file stating I never received it and there's something rebutting that.

Appellant's App. p. 399.

In summary, Lipke testified that he would not dispute that he received the copy of the Policy appearing in his file in April of 2002 if Auto–Owners's records indicated that they sent it to him, and the undisputed designated evidence establishes that it did. Moreover, Lipke testified that he assumed that he did receive a copy of the Policy and that there would be an indication in his file if he had not. Lipke's file contains no such indication. It should also be noted that there is no designated evidence that Lipke ever made another request for a copy of the Policy after April 2, 2002, a further indication that he did receive a copy following his first request. At most, Lipke's testimony indicates a lack of recall regarding receipt of the policy, which is not at all the same thing as denying that he received it; the absence of evidence is not evidence. *See, e.g., Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir.2002) (concluding that an averment from an affiant that she " 'does not recall seeing or reviewing the Arbitration Program brochure['] ... does not raise a genuine issue whether the brochure

was distributed to her"). We emphasize that delivery of the Policy to Lipke, Hughes's agent, was legally equivalent to delivery to Hughes, even if Hughes never actually saw the Policy. *See, e.g., Southport Little League v. Vaughan*, 734 N.E.2d 261, 274 (Ind.Ct.App.2000) (" '[T]he law imputes the agent's knowledge to the principal, even if the principal does not actually know what the agent knows.' ") (citation omitted), *trans. denied.*

Hughes has failed to establish that a genuine issue exists as to whether Auto–Owners discharged its duty to provide him or his agent with a copy of the Policy upon request. Consequently, the trial court erred in denying Auto–Owners's second summary judgment motion on the basis that Hughes failed to bring suit within one year of the loss, as required by the Policy. We reverse and remand with instructions to enter summary judgment in favor of Auto–Owners.

We reverse the judgment of the trial court and remand with instructions.

KIRSCH, J., and CRONE, J., concur.