Argued and submitted March 10, decision of the Court of Appeals affirmed in part
and reversed in part; judgment of the circuit court affirmed in part and
reversed in part December 26, 2003

Nancy J. JENSEN,
*Respondent on Review-Petitioner on Review,*

*v.*

Walter R. MEDLEY,
Sublimity Insurance Company,
Local Union No. 49,
and Roofers Building Association
& Charles Ouellette,
*Defendants,*

*and*

THE UNITED UNION OF ROOFERS,
WATERPROOFERS & ALLIED WORKERS,
*Petitioner on Review-Respondent on Review.*

(CC 9410-07258; CA A97720; SC S48478, S48487)

82 P3d 149

Steven Feinberg, of Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., Chicago, Illinois, argued the cause and filed the briefs for petitioner on review-respondent on review. With him on the briefs were Marvin Gittler, of Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., Chicago, Illinois, and Janet M. Schroer, of Hoffman, Hart & Wagner, Portland.

I. Franklin Hunsaker, of Bullivant Houser Bailey, Portland, argued the cause and filed the briefs for respondent on review-petitioner on review. With him on the briefs was Steven V. Rizzo, of Seidl & Rizzo, LLP, Portland.

Gene B. Mechanic, of Goldberg, Mechanic, Stuart & Gibson, Portland, filed the brief for *amicus curiae* American Federation of Labor-Congress of Industrial Organizations. With him on the brief was Craig Becker, Chicago, Illinois.

Maureen Leonard, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, and Balmer, Justices.**

BALMER, J.

---

** De Muniz and Kistler, JJ., did not participate in the consideration or decision of this case.

**BALMER, J.**

This case requires us to determine and apply the standards under which an international union can be held liable for the wrongful actions of an affiliated local union. Plaintiff brought this action against the United Union of Roofers, Waterproofers & Allied Workers (International), its Local No. 49 (Local), and others. She alleged various claims, including employment discrimination in violation of the Oregon whistleblower law, *former* ORS 659.550 (1991), *renumbered as* ORS 659A.230 (2001), following her employment and subsequent discharge as a bookkeeper and secretary at Local. The whistleblower law claim is the only claim on review.

A jury determined that International was liable for the whistleblower law violation and returned a verdict for plaintiff on that claim for noneconomic and punitive damages. Plaintiff appealed, and International cross-appealed. The Court of Appeals affirmed International's liability for plaintiff's damages, but ordered a new trial unless plaintiff agreed to a reduction of the award of punitive damages because, the court concluded, the amount of that award violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jensen v. Medley*, 170 Or App 42, 11 P3d 678 (2000). Plaintiff and International each petitioned for review, and we allowed both petitions.[1] As explained below, we affirm the jury's award of noneconomic damages because, although the trial court erred in giving certain jury instructions, that jury award was supported by an alternative theory of liability that International did not challenge on appeal. We reverse the jury's award of punitive damages because, applying the appropriate standard of liability, plaintiff presented no evidence from which a reasonable jury could find International liable for punitive damages. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals, and affirm in part and reverse in part the judgment of the trial court.

---

[1] The only parties to the action on review in this court are plaintiff and International.

## I. BACKGROUND

We state the facts in the light most favorable to plaintiff, because she was the prevailing party before the jury. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 490, 982 P2d 1117 (1999) (viewing evidence and reasonable inferences to be drawn therefrom in light most favorable to party in whose favor verdict was returned and considering whether any evidence exists to support jury's verdict); Or Const, Art VII (Amended), § 3 (standard of review when jury has rendered verdict). Local is one of 96 local unions affiliated with International. The constitution of International defines the relationship between International and its affiliated locals.

In 1993, Medley, the business agent and financial secretary for Local, hired plaintiff as his secretary and as bookkeeper. Ziegler, a vice president on International's executive board, trained plaintiff to use International's accounting software. During plaintiff's employment, she came to believe that Medley had stolen petty cash from Local and had altered financial records to disguise his thefts. In February 1994, plaintiff reported Medley's alleged theft to the Department of Labor (DOL) and informed Ziegler that she had made that report. Ziegler indicated that he wished that she had not made the report. Neither Local's internal investigation nor a subsequent inquiry by DOL revealed evidence of financial impropriety by Medley.

Medley became concerned that plaintiff's allegations against him would hurt him in an upcoming union election. Plaintiff's husband was a member of Local and opposed Medley's re-election, and Medley believed that plaintiff might have been using her position to undermine Medley's credibility with members of Local. Medley told plaintiff that International's executive board wanted him to fire her. In March 1994, Medley reduced plaintiff's hours to two days per week. Medley told Ziegler that he wanted to fire plaintiff, and Ziegler, without knowing that Medley already had reduced plaintiff's hours, suggested that Medley reduce her hours and that that reduction might induce her to resign. One week after reducing her hours, Medley terminated plaintiff's employment.

Plaintiff brought this action, alleging, among other things, a violation of the whistleblower law, *former* ORS 659.550. Plaintiff sought to hold International liable for Local's wrongdoing under the theory that Local was the agent of International, at least for purposes of plaintiff's whistleblower law claim. At trial, International proposed a jury instruction that stated that its constitution did not establish that Local was "an arm of the International for all purposes" and a second instruction that set out International's version of the law of agency applicable to the relationship between international unions and their affiliated local unions. The trial court refused to give those instructions and, instead, instructed the jury based on its understanding of Oregon agency law. On the whistleblower claim, the jury found that Medley and Local wrongfully had terminated plaintiff's employment or reduced her hours and that International also was liable for those actions. The jury awarded plaintiff noneconomic damages in the amount of $35,000 and punitive damages in the amount of $1,250,000.[2] Because plaintiff had prevailed on the whistleblower claim, which is a statutory employment discrimination claim, the trial court awarded plaintiff her attorney fees, although in an amount lower than plaintiff had requested.

As noted, plaintiff appealed, and International cross-appealed. Plaintiff argued that the trial court erred in determining the amount of the attorney fees award. International raised a number of assignments of error, including challenges to the jury instructions and to the award of punitive damages.

The Court of Appeals affirmed the trial court's ruling on plaintiff's attorney fees request without discussion. As noted, the Court of Appeals went on to hold that the trial court had not erred in giving plaintiff's proposed instructions or in refusing to give International's proposed instructions. 170 Or App at 47-55. The court also rejected International's

---

[2] Local filed a voluntary bankruptcy petition after the jury returned its verdict, but before the trial court entered judgment, and then settled with plaintiff while the appeal was pending. Medley had settled with plaintiff before trial and had received a covenant not to sue or further execute. Accordingly, the judgment on the statutory whistleblower claim is against International only.

argument that the trial court should have granted International's motion for a directed verdict on plaintiff's claim for punitive damages against International because there was no evidence that International's conduct had shown wanton disregard for plaintiff's rights or that International had ratified wanton conduct by Medley or Local. *Id.* at 55-57. Finally, the court concluded that the award of $1,250,000 in punitive damages was excessive and that a punitive damages award of $175,000 was "reasonably related to the harm that occurred[.]" *Id.* at 60. It therefore ordered the trial court to grant International's motion for a new trial unless plaintiff agreed to submit an amended judgment with a punitive damages award in the amount of $175,000.

On review, International again argues that the jury instructions that the trial court gave improperly stated the law of agency as it applied to the liability of an international union for the acts of an affiliated local union. Plaintiff challenges several aspects of the Court of Appeals decision, including the reduction of the jury's award of punitive damages.

## II.  JURY INSTRUCTION ISSUE

### A.  *Background*

We begin with International's claim that the trial court incorrectly instructed the jury on the law of agency and, specifically, on the circumstances in which International could be found liable for Medley's termination of plaintiff's employment with Local. The jury instructions are critical, because they formed the basis for the jury's answers to questions posed on the verdict form. International argues that, because the agency instruction was erroneous, this court must reverse the judgment and remand the case for a new trial. As we explain below, although we agree with International that the jury instruction regarding agency was erroneous, we affirm the award of noneconomic damages on an alternative basis. Nevertheless, the jury instruction issue is relevant to our reversal of the punitive damages award, and we therefore consider it at some length here.

The first question on the verdict form was the following:

> "Did Walter Medley and Local 49 terminate or reduce the hours of plaintiff's employment because she made a good faith report to the Department of Labor that Mr. Medley had engaged in criminal activity?"

If the jury answered "yes" to that question, it was to proceed to the second question:

> "Was the defendant International Union liable for the plaintiff's hours being reduced or being terminated from her employment?"

If the jury answered "yes" to the second question, it was to determine plaintiff's damages. The jury answered "yes" to both those questions and then determined noneconomic and punitive damages, as stated above.

The permissibility of the jury's answer to the first question is not at issue here. We need to determine whether the trial court's instructions accurately stated the legal principles that would allow the jury to answer "yes" to the second question, that is, the legal principles that would allow the jury to find International liable for the actions of Medley and Local in reducing plaintiff's hours or terminating her employment. At the outset, we observe that plaintiff does not argue that she was the employee of International, rather than Local. She also does not argue that Medley, who had made the decision to terminate her, was an employee of International or that Ziegler, who was an employee of International, had terminated her employment or reduced her hours. Instead, plaintiff asserts that International should be held liable for her termination as an employee of Local because Medley terminated her in his capacity as an officer of Local and Local, in turn, was acting as the agent of International. Alternatively, as discussed below, plaintiff argues that International is liable because it ratified Medley's termination of plaintiff.

## B. *"Servant" and "Non-servant" Agents Under Agency Law*

Agency law recognizes two kinds of agents that need to be distinguished here: employees, who still often are referred to as "servants" in discussions of agency law, and

"non-servant" agents. *See Wilken v. Freightliner*, 265 Or 42, 45, 507 P2d 1150 (1973) (distinguishing between corporation's liability for acts of employee and acts of "non-servant agent"). In general, an employer (master) is liable for the torts of its employee (servant) committed by the employee while acting in the scope of his or her employment. *Minnis v. Oregon Mutual Ins. Co.*, 334 Or 191, 201, 48 P3d 137 (2002). However, different rules apply to the liability of a principal for the torts of an agent that is not a servant. *Compare Restatement (Second) of Agency* §§ 219-249 (1958) (principal's liability for torts of servants) *with id.* at §§ 250-264 (principal's liability for torts of nonservant agents). For example, although a principal is liable for physical injuries to a third party caused by the negligence of the principal's employee acting within the scope of employment, *id.* at § 243, a principal ordinarily is *not* liable for similar injuries caused by the negligence of a nonservant agent, unless the principal had a specific duty to the third party, *id.* at § 250.[3] Thus, in *Wilken*, 265 Or at 45-47, this court held that a principal was not liable for an automobile accident caused by a nonservant agent, even if the accident occurred in the course of the agent's activities on behalf of the principal.

■     Plaintiff's theory in this case involves two agency relationships: Medley as the agent of Local, and Local as the agent of International. It is undisputed that Medley, as the business manager of Local, was an agent of Local and that, in hiring, supervising, and terminating plaintiff's employment, he was acting within the scope of his employment. In the nomenclature of agency law, Medley was a "servant" of Local and, because he was acting within the scope of his employment, Local was liable for his wrongful termination of plaintiff. Neither Local nor Medley, however, was a "servant" of International. The relationships among Medley, Ziegler, Local, and International, described above, demonstrate that Local was, at most, a "non-servant agent" of International.

---

[3] The *Restatement* at § 250 summarizes the law this way:

"A principal is not liable for physical harm caused by the negligent physical conduct of a non-servant agent during the performance of the principal's business, if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to have the act performed with due care."

As noted above, a principal is liable for the actions of an employee or "servant agent" only if the employee is acting within the course and scope of his or her employment. However, a principal can be liable for the actions of a nonservant agent only if those actions are within the actual or apparent authorization of the principal. *See Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 686-88, 669 P2d 1132 (1983) (describing elements required to find agent's actual or apparent authority to act for principal). For example, a principal is not liable for misrepresentations by an agent "unless the agent is authorized or apparently authorized to make the statements or it is within his inherent power to conduct the transaction in the course of which they are made." Warren A. Seavey, *Agency* 163 (1964). As applicable here, those black letter statements of the law mean that a finding that Local was an agent of International does not necessarily mean that International can be held liable for all Local's actions, or even for all Local's actions that further the interests of International. Instead, as described below, International can be held liable only for the acts of Local that are within Local's actual or apparent authority to act on behalf of International.

Both parties at times conflate the issue whether Local was an agent of International for any purpose with the ultimate issue at trial, *viz.*, whether International is liable for the wrongful acts of Local and Medley towards plaintiff. In the context of an employer-employee (master-servant) relationship, that conflation rarely confuses the inquiry, because of the employer's broader liability for the employee's conduct. In the context of the relationship between a principal and a nonservant agent, however, as the discussion above suggests, it is important to recall that one party may be determined to be the agent of another (the principal), but also that the principal still might not be liable for specific wrongful acts of that agent.

C.   *Jury Instructions on Agency*

The foregoing discussion demonstrates that, properly framed, the issue on review is whether the jury instructions correctly stated the law regarding when an international union can be held liable for particular wrongful actions

of an affiliated local union. International proposed the following jury instruction on agency:

> "The International Union cannot be liable for the wrongful acts of Local 49 or any of Local 49 officers or employees absent an agency relationship between the International and Local 49 or the International and any Local 49 officer or employee such as defendant Medley or defendant Ouellette. *This agency relationship can be established only if the international instigated, supported, ratified, or encouraged the local's wrongful acts.* Knowledge of a local's possibly illegal activities does not impose a duty upon the international to intervene."

(Emphasis added.)

Instead, the trial court gave the following instruction, to which International objected:

> "The International can only be liable for Local 49's act if Local 49 was the agent of the International and acted in the scope of that agency or if the International ratified Local 49's actions. I instruct you a principal [is] responsible for the acts of an agent who is acting within the scope of the agency. *An agent is authorized to act for and is subject to the control or right to control of the principal. An agent acts within the scope of his agency if, at the time of commission of the act in question, he was performing a service for the principal in furtherance of the principal's business. The acts of an agent within the scope of that agent's authority are to be considered by you as the acts of the principal.* You must determine if Local 49 was the agent of the International union, and you must determine whether or not the International union ratified Local 49's action."

(Emphasis added.)

International makes several arguments regarding the jury instructions set out above. International first argues that the second instruction quoted above, read together with several related instructions, was erroneous because it improperly suggested that International, as a matter of law, was liable for all acts of Local and Local's employees. International asserts that the Court of Appeals erred in construing International's constitution to "conclusively establish, as a matter of law, that an affiliated local union is an actual agent of the International for all purposes." International

notes that its constitution is substantially similar to the constitutions of other international labor unions. International cites provisions in the constitution that, it asserts, provide for substantial autonomy for the local unions affiliated with it.[4] It also cites federal cases holding that certain union constitutions do not establish, for all purposes, an agency relationship between International and its locals.[5]

The problem with that argument is that, contrary to International's assertion, the Court of Appeals did not hold that International's constitution, standing alone, affirmatively established agency as a matter of law "for all purposes." On the contrary, that court merely held that the constitution and other evidence made the relationship between International and Local similar enough to other relationships previously subjected to Oregon's common law of agency that Local could be found by a reasonable jury to be an agent of International. *Jensen*, 170 Or App at 52. We discuss that conclusion by the Court of Appeals in greater detail below. At this point, however, it is sufficient to note that, contrary to International's assertion, neither the trial court nor the Court of Appeals ruled that International's constitution established, as a matter of law, that Local was the agent of International for all purposes.

We also reject International's second argument that, because the constitution does not establish agency *affirmatively* as a matter of law—and we agree that it does not— Local, as a matter of law, *cannot* be the agent of International. International does not argue and, indeed, could not argue, that the constitution is not evidence to be considered in determining whether an agency relationship exists for particular purposes. That is all that the constitution was used for here, and there was nothing inappropriate in using

---

[4] Those provisions include: the guarantee that local union members may establish their own dues and elect their own officers; the right of local members to select delegates who, in turn, select officers of International; and the requirement that local unions pay International for its services.

[5] *See, e.g., Laughon v. Int'l Alliance of Theatrical Employees,* 248 F3d 931, 935 (9th Cir 2001); *Childs v. Local 18, Int'l Bhd of Elec Workers,* 719 F2d 1379, 1382 n 2 (9th Cir 1983); *Shimman v. Frank,* 625 F2d 80, 97-99 (6th Cir 1980) (each holding that specific international union constitution did not, as matter of law, establish agency relationship between international union and its local union).

it as evidence of the relationship between International and Local.

We now turn to International's argument that the trial court's instruction incorrectly stated the applicable law of agency. Much of the dispute between the parties centers on whether federal labor law or Oregon's common law of agency should have been the basis for the agency instruction, and the parties' arguments in that regard are the same arguments that they made before the trial court and the Court of Appeals.

International argues that the federal common law of agency, as set out in *Carbon Fuel Co. v. United Mine Workers*, 444 US 212, 100 S Ct 410, 62 L Ed 2d 394 (1979), should apply to the question whether International is vicariously liable for Local's conduct towards plaintiff. In that case, the Court held that an international union was not liable under the Labor Management Relations Act (LMRA) for damages that an employer suffered as a result of wildcat strikes that the international had opposed, but that had been undertaken by an affiliated local, because the international had not "instigated, supported, ratified, or encouraged any of the work stoppages." 444 US at 218. International based its proposed instruction, quoted above, on those words from *Carbon Fuel*.

Plaintiff responds, as she did below, that the instruction regarding International's liability for the acts of Medley and Local should be based on Oregon's common law of agency. She argues that, under applicable principles of agency law, International could be held liable for the wrongful acts of Medley and Local if it had the "right to control" Medley and Local and if, at the time of the wrongful acts, Local was performing a service "in furtherance of" International's business. Plaintiff based her proposed jury instruction, quoted above, on what she argued were similar Oregon cases applying the common law of agency.

As discussed above, the trial court gave plaintiff's proposed instruction and declined to give International's proposed instruction. The Court of Appeals agreed with that decision, stating that the trial court properly had declined to give International's proposed instruction because there had

been no reason to use a standard that Congress had adopted under the LMRA in a case involving a state law employment claim by a nonmember employee of a local union. 170 Or App at 50. The Court of Appeals then turned to Oregon's common law of agency to determine whether the trial court's instruction, proposed by plaintiff, accurately stated the law:

> "Under Oregon law, the common law of agency relationships has developed around the 'right to control' standard, as set forth in the jury instruction that the trial court gave the jury. Although the test is most often used in an employer-employee agency relationship, it also has been used to determine agency relationships between certain types of business entities. Most notably, it has been applied to franchiser-franchisee relationships and manufacturer/distributor-dealer relationships that are in some ways analogous to the international-local union relationship at issue in this case."

*Id.* at 50. The court then discussed *Peeples v. Kawasaki Heavy Indust., Ltd.*, 288 Or 143, 603 P2d 765 (1979), and *Miller v. McDonald's Corp.*, 150 Or App 274, 945 P2d 1107 (1997), in which the "right to control" test was applied to determine whether one business entity could be liable for the torts of another entity. As discussed in greater detail below, the Court of Appeals agreed with plaintiff that those decisions supported the jury instruction that based liability on whether International had a "right to control" Local.

On review, International argues that, whether considered solely as a matter of the common law of agency or with reference to federal labor law standards based on *Carbon Fuel*, the "right to control" test is inapplicable here. Instead, International argues, it can be liable for the actions of Local, its "non-servant agent," only if it actively participated in or ratified Local's actions. Plaintiff counters that *Peeples* and *Miller* correctly state the common-law agency principles applicable here and that the Court of Appeals correctly affirmed the trial court's decision to give a jury instruction that focused on whether International had the "right to control" Local. For the reasons that follow, we agree with International.

As noted in our earlier discussion of agency law, an employer generally is liable for the torts of its employees when the employees are acting within the scope of their employment. The familiar "right-to-control" test, as the Court of Appeals observed in this case, is most often used in the employer-employee agency relationship. *Jensen*, 170 Or App at 50. If one has the "right to control" the physical conduct of a person in the performance of a service, that person is usually considered a "servant" or employee. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 99-100, 45 P3d 936 (2002); *see also Restatement* at § 220 (1958) (defining "servant"). In extending the "right-to-control" test from the employer-employee context to the International-Local relationship, the Court of Appeals, as noted, relied on this court's decision in *Peeples* and the Court of Appeals' own decision in *Miller*. Those cases, however, do not support the trial court's jury instruction at issue here.

In *Peeples*, a motorcyclist claimed that a motorcycle manufacturer and a distributor were vicariously liable for the negligence of a dealer who had performed service work under terms of a warranty agreement. This court affirmed a jury verdict against the distributor, because the contract between the distributor and the dealer gave the distributor the "right to control *the manner in which the dealer performed warranty service * * *.*" 288 Or at 149-50 (emphasis added). However, the court reversed the judgment against the manufacturer, because there was no comparable evidence that the manufacturer had the right to control "the dealer's performance of service work." *Id.* at 150. In *Miller*, the Court of Appeals reversed summary judgment for a fast-food franchiser on a claim by a customer for damages resulting from a foreign object in the customer's hamburger. The court examined in detail the contractual relationship between the franchiser and the franchisee and the aspects of the franchisee's business operations that were subject to the franchiser's control. That contract gave the franchiser the right to control the franchisee's "food handling and preparation," which had been "the precise part of its business that allegedly resulted in plaintiff's injuries." 150 Or App at 281. In those circumstances, the court held, the franchisee could be the agent of the franchiser. *Id.*

Here, the Court of Appeals examined various aspects of the contractual relationship between International and Local. It noted that, under International's constitution and bylaws, local unions come into existence by applying for a charter and being accepted by International; that a local's constitution and bylaws must conform to International's; that International may revoke a local's charter whenever necessary or advisable, with the assets of the local reverting to International; that detailed rules and requirements apply to a local's receipt, handling, and transfer of payments from local union members to International; and that International may impose a trusteeship upon a local to deal with financial mismanagement or carry out other legitimate objects of the organization. *Jensen*, 170 Or App at 51-52.

Based on the foregoing review, the Court of Appeals concluded that the relationship between the International and Local was "similar enough in nature to an agreement between a franchiser and a franchisee to be subject to the same common-law 'right to control' test of agency under Oregon law." *Id.* at 52. It held that the jury instruction the trial court gave "satisfactorily described that common-law test." *Id.*

The flaw in the Court of Appeals' reasoning, and in plaintiff's argument, is that the instruction that the trial court gave failed to connect the International's "right to control" to the conduct that was the basis for plaintiff's complaint. As we previously noted in our discussion of agency law, whether one entity can be liable to a third party for the wrongful conduct of another entity in a context other than master-servant depends not only on whether the second entity is an "agent" of the first for some purpose, but also on whether the principal authorized or intended the agent to act on its behalf with respect to the conduct that gave rise to the third party's claim. The trial court's instruction here was based on the abstract question whether Local "was authorized to act for and subject to the control or right to control of the principal." In *Peeples*, this court stressed that the distributor was liable for the dealer's negligence only because the distributor had had the right to control the manner in which the dealer performed the particular kind of work that had provided the basis for the complaint. Similarly, in *Miller*, the

Court of Appeals noted that the franchiser could be liable because it had the right to control the franchisee "in the precise part of its business" that had provided the basis for plaintiff's complaint. Here, however, nothing in the trial court's instruction told the jury that it was to determine whether Local had been authorized to act for and had been subject to the control or right to control of International *with respect to Local's hiring and firing of an employee*. Indeed, the only evidence that was introduced regarding the nature of International's "right to control" indicated that International had had the right to control Local's organizational structure and the way that Local collected and accounted for union dues, but that International had had no authority over Local's employment policies, including its decision to reduce plaintiff's hours or terminate her employment. Unlike the Court of Appeals, we do not find the nature of the relationship between International and Local to be so similar to the business relationships in *Peeples* and *Miller* that the "right-to-control" test used in the trial court's instruction was the appropriate standard to determine whether Local had been the agent of International for purposes of Local's own employment practices.

As discussed above, the fact that a principal has the right to control some acts of its nonservant agent in furtherance of the principal's business does not mean that the principal has the right to control all those acts. If a principal were liable for all the torts of a nonservant agent performed in furtherance of the principal's business, whenever there was some evidence that the principal had a "right to control" the agent only in some respects, then the principal could face liability for conduct of the agent that the principal did not in fact control or have a right to control. The law of agency does not extend that far. Both the trial court's contrary conclusion, and the Court of Appeals affirmance of it, were error.

In summary, the trial court's instructions allowed the jury to hold International liable for *all* acts of Local related to union business, so long as International had the right to control *anything* that Local did. The instruction thus allowed the jury to impose liability on International for Local's acts in circumstances in which neither Oregon's existing agency cases, such as *Peeples* and *Miller*, common-law

agency principles outlined in the *Restatement*, nor federal cases such as *Carbon Fuel* would permit. The instruction was erroneous.

D. *Ratification and Shoup*

█    Based on our holding above that the agency instruction was erroneous, we ordinarily would consider next whether that error required us to reverse the judgment and remand for a new trial. Plaintiff, however, argues that, even if the agency instruction was erroneous, this court should affirm International's liability because the trial court also instructed the jury that it could find International liable on the alternative ground that International had ratified Local's actions regarding plaintiff's termination. We first describe and then evaluate plaintiff's argument, with which we agree in part.

Plaintiff rests her argument on three assertions. First, plaintiff notes that the trial court's instruction, quoted above, stated that International could be held liable if Local had been the agent of International and had acted within the scope of its agency "*or* if the International [had] ratified Local 49's actions." (Emphasis added.) Second, she points out that International did not object to the ratification portion of that instruction and, moreover, that "ratification" was one of the grounds for imposing liability set out in International's own proposed instruction on agency. Third, she asserts that the verdict form, to which International did not object, simply asked the jury whether International was liable for the reduction in plaintiff's hours or the termination of her employment by Medley and Local; it did not ask the jury whether it found International liable because Local had been International's agent or because International had ratified Local's actions.

From the foregoing factual and procedural premises, each of which is correct, plaintiff argues that this court's recent decision in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), requires that the judgment be affirmed. In *Shoup*, this court considered whether a judgment based on a general verdict should be affirmed when multiple claims were submitted to the jury and one of the claims was invalid, but there was evidence to support another, valid claim. 335

Or at 176. This court held that, in those circumstances, the party appealing the judgment could not show that the jury had based its verdict on the invalid claim, rather than on the valid claim. *Id.* at 179. That party therefore was unable to meet the statutory requirement that an appellate court may reverse or modify a trial court judgment only for error "substantially affecting the rights of a party." ORS 19.415(2).

Plaintiff is correct that *Shoup* applies to one aspect of the judgment here. In *Shoup*, several specifications of negligence were submitted to the jury, one of which erroneously was submitted and two of which properly were submitted. The verdict form did not require the jury to identify which specification was the basis for its verdict in favor of the plaintiff. Here, the jury instructions gave the jury two possible grounds for imposing liability on International: agency and ratification. International objected to the agency instruction, and, as discussed above, we agree that that instruction was erroneous. International did not, however, object to the ratification instruction.[6] As noted previously, the verdict imposing liability on International did not distinguish between ratification and agency as the basis for the verdict. For that reason, International cannot demonstrate that the verdict was based on the erroneous instruction on agency, rather than on the correct (or at least unchallenged) instruction on ratification.

Having found that ratification could provide an alternative basis to support the jury's finding that International was liable for Local's conduct, under *Shoup*, we next would consider whether the record contains sufficient evidence to support liability on that alternative basis. Here, however, as to the noneconomic damages, we do not reach that issue. Although at trial International moved unsuccessfully for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for noneconomic damages, International did not challenge that award on appeal. Accordingly, we affirm the portion of the judgment awarding noneconomic damages.

---

[6] Because International did not object to the ratification portion of the instruction and proposed a similar ratification instruction itself, we assume without deciding that the ratification instruction that was given correctly stated the law.

As to the award of punitive damages, however, International did argue on appeal that the record contained no evidence to support liability on the basis of ratification. We address that argument below.

## III.  INTERNATIONAL'S MOTION FOR A DIRECTED VERDICT ON PUNITIVE DAMAGES

At trial, International moved for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for punitive damages, arguing that plaintiff had introduced no evidence from which a reasonable jury could conclude that International's conduct was wanton or that International had ratified any other person's wanton disregard of plaintiff's rights. The trial court denied those motions, and the Court of Appeals affirmed. *Jensen*, 170 Or App at 55-57.

Because of the conclusions that we reach above, we review the directed verdict motion by examining the record to determine only whether there is any evidence to support International's *ratification* of the willful and wanton misconduct of Medley and Local, not to determine whether there is evidence related to *agency* that would support the jury's decision to hold International "vicariously liable" for the misconduct of Medley and Local.

A jury may impose punitive damages on a principal for the wrongful acts of its agent if the principal ratified the acts of the agent. *Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 27-28, 803 P2d 1178 (1991). Ratification of an agent's actions by a principal can occur only if there is "evidence from which a jury could properly find that the principal, with knowledge of the material facts, intended to ratify" the agent's action. *Minniti v. Cascade Employers Assn*, 280 Or 319, 332, 570 P2d 1171 (1977). We therefore review the record to determine whether there is any evidence to support plaintiff's claim that International, with knowledge of the material relevant facts, intended to ratify the wrongful conduct of Medley or Local towards plaintiff. Plaintiff summarized the evidence in support of her claim in her brief in the Court of Appeals and concluded with the assertion that substantial evidence exists "that Medley and Local 49 retaliated against Plaintiff because she made a good faith report of

apparently criminal activity to DOL." Plaintiff is correct in that regard.

Under the legal principles set out above, for International (in contrast to Medley or Local) to be liable to plaintiff for punitive damages, plaintiff would have to produce evidence that International had ratified Medley's retaliatory termination of plaintiff. There is no such evidence in this record.[7] The only evidence that conceivably could point in that direction is Ziegler's suggestion to Medley, after Medley expressed his desire to terminate plaintiff, that Medley reduce plaintiff's hours in the hope that she might quit her job. But that evidence cannot demonstrate that International ratified Medley's termination of plaintiff, because the uncontradicted evidence at trial was that, unbeknownst to Ziegler, Medley *already* had reduced plaintiff's hours, before Ziegler made the suggestion, in an effort to get plaintiff to quit.

■   The Court of Appeals stated that Ziegler's suggestion to cut plaintiff's hours was evidence that International ratified Medley's retaliation against plaintiff. *Jensen*, 170 Or App at 56. However, based on the legal standard described above, ratification cannot occur unless the principal, with knowledge of the material facts, *intends* to ratify the act. International could not have intended to ratify conduct that it was not even aware of at the time that the purported ratification took place. Moreover, International lacked knowledge of the material facts, including the very conduct that it is alleged to have ratified, at the time of the asserted ratification. And there is no other evidence of any ratification by International of Local's reduction in plaintiff's hours or termination of plaintiff's employment.

Because there was no evidence to support International's liability for punitive damages on the ground that it ratified the wrongful conduct of Medley and Local, the trial court erred in denying International's motions for a directed verdict and for judgment not withstanding the verdict on the punitive damages claim. As there is no basis on this record

---

[7] Plaintiff and others had provided information to International about various improprieties committed by Medley. That International apparently ignored that information provides no support to plaintiff's claim that International ratified plaintiff's termination.

for the punitive damages award against International, we do not discuss the parties' arguments regarding the amount of punitive damages.

## IV.   CONCLUSION

We summarize our conclusions as follows: (1) the trial court incorrectly instructed the jury on the rules of agency as they apply to International's liability for the acts of Medley and Local; (2) International did not object to the ratification instruction that provided an alternative basis for the jury to find International liable for the actions of Medley and Local, nor did it challenge on appeal the sufficiency of the evidence to support the award of noneconomic damages; (3) the trial court should have granted International's motion for a directed verdict on plaintiff's claim for punitive damages against International, because there was no evidence that International had ratified Medley's termination of plaintiff or his reduction of her hours. The result of those conclusions is that we affirm the award of noneconomic damages against International and vacate the award of punitive damages.[8]

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is affirmed in part and reversed in part.

---

[8] Plaintiff also asserts that the trial court erred in determining the amount of attorney fees to award her. As noted, the Court of Appeals affirmed the trial court's ruling without discussion. Plaintiff has not made a sufficient showing to cause us to re-examine the Court of Appeals' affirmance of the trial court's determination.